IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 07-998 (DAR) |
| v. | ) ) | |
| DANIEL FLEETWOOD | ) ) ) | |
| Defendant. | ) | |

**AMENDED PLAINTIFFS' RESPONSE TO DEFENDANTS' CIVIL STATEMENT TREATED AS A MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR CHANGE OF VENUE**

### INTRODUCTION

International Painters and Allied Trades Industry Pension Fund ("Plaintiff" or "Fund"), by and through their legal counsel, Jennings Sigmond, submits this Memorandum of Law in Response to Defendants' "Civil Statement." To remove doubt from the record and answer Fleetwood's request, Plaintiff accepted the Civil Statement as a motion to dismiss or for summary judgment, or in the alternative, for change of venue pursuant to 28 U.S.C. §1404 or §1406, as it requests a ruling on jurisdiction and venue and now responds to that "motion."

Defendants' assertions that this Court lacks jurisdiction or venue are not supported by the law or the facts in this case.

- The Court has subject matter jurisdiction over a claim for overpayment of benefits exists under 28 U.S.C. §1331 or directly under ERISA, 29 U.S.C §1132(e)(1), with ancillary jurisdiction over any state law claim relating to the payments to Fleetwood under 28 U.S.C §1367.

- Venue for suit also lies in the District of Columbia. 29 U.S.C §1132(e)(2) allows suit in the district in which the Plan is located. 28 U.S.C. §1391(b) allows suit in "…a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(b)(2). The plan is administered in the District of Columbia and all of the acts or omissions leading to the overpayments to Fleetwood occurred at the Plan offices in the District of Columbia.

- ERISA is a federal law and *in personam* jurisdiction thus requires only minimum contacts with the United States. Fleetwood is a resident of Delaware within the United States.

- Judge Huvelle informally reviewed the convenience of the parties at the first telephone pretrial. The Plan's witnesses and records all are located in the District of Columbia and are likely to be the major discovery and testimony in the case. Defendant Fleetwood lives in southern Delaware and is as distant from federal court in Wilmington as he is from the District of Columbia

Plaintiff thus opposes any action to dismiss the case or change venue in this action.

## STATEMENT OF FACTS

The standard governing this Court's consideration of facts on a motion to dismiss is most often addressed only on a motion to dismiss for failure to state a claim under Fed.R.Civ.Pro. 12(b)(6). Even in that context and in a conspiracy case, *Bell Atlantic Corporation v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1965 (May 21, 2007) (emphasis supplied), recently explained:

> … stating such a claim requires a complaint with enough factual matter **(taken as true)** to suggest [a cause of action]. Asking for plausible grounds … does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [a valid legal claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

We present the background of the case in light of this standard.

------------------------

Fleetwood is the designated beneficiary of the death benefits for John Pierce ("Pierce"). Compl. ¶ 7. Pierce was a Participant under the terms of the Pension Fund and agreed to abide by the rules and regulations as set forth in the International Painters and Allied Trades Industry Pension Plan ("Plan") and the terms of his pension award. Compl. ¶¶ 7, 9.

Pierce opted for payment of disability benefits in the form of a single life annuity with a five-year certain option. Compl. ¶ 9. According to this option, if Pierce died before receiving sixty (60) monthly pension payments, the benefit would continue to be paid to his beneficiary until a total of sixty (60) monthly pension payments had been paid to him and the beneficiary. Compl. ¶ 10. Pierce died in February 1997 prior to receiving any benefit payments. Compl. ¶ 11.

On November 14, 1997, Plaintiff sent a letter Fleetwood explaining that he had been designated as Pierce's beneficiary and that, as the beneficiary, he would receive Pierce's remaining pension benefits for a total of 60 months only until February 1, 2002. Compl. ¶ 12, Ex. 1. Fleetwood received his first payment in November for the retroactive amounts for the eight (8) month period March 1997 through November 1997. Compl. ¶ 11. Under Section 7.13 of the Plan and the letter, no benefits were payable to Fleetwood for any months beyond the sixty (60) payments. Compl. ¶ 21, Ex. 2.

Due to an administrative error, the monthly pension benefits continued for an additional forty-two (42) months following the schedule termination date. Compl. ¶ 13. The error was not discovered during regular annual audits, which are necessarily done on a sampling basis in a large fund. Fleetwood knowingly accepted these additional forty-two (42) payments totaling

$56,908.32. Compl. ¶ 25. The error was not discovered until a compliance review in August 2005. Compl. ¶ 14. Fleetwood's monthly payments then were terminated. Compl. ¶ 14.

The Fund thereafter notified Fleetwood in a certified letter dated August 24, 2005 that he had received forty-two (42) overpayments in the amount of $56,908.32 ($1,354.96 x 42 months) and requested that Fleetwood contact the Fund office in order to arrange a repayment schedule. Compl. ¶ 15, Ex. 3. However, Fleetwood failed to respond to the letter. Compl. ¶ 16.

Without a response, on June 22, 2006, the Fund sent a notice of debt collection letter to Fleetwood containing a right of appeal provision. Compl. ¶ 17. Fleetwood responded in a letter date June 25, 2006 that he refused to repay the overpayment. Compl. ¶ 18. The Fund treated this letter as an appeal. Compl. ¶ 18. Thereafter the Trustees reviewed Fleetwood's appeal at the May 2007 meeting. Compl. ¶ 18. Fleetwood's appeal was denied. Compl. ¶ 18.

Fleetwood, by accepting the benefit payments, accepted the terms of the Plan and his death benefits award letter. Compl. ¶¶ 30, 31. Fleetwood's unauthorized receipt of benefit payments was in violation of the terms of the Plan. Compl. ¶ 24. Fleetwood has been unjustly enriched at the expense of the Fund and its other participants and beneficiaries. Compl. ¶¶ 47-51.

The Fund seeks repayment of the benefits Fleetwood received beyond the authorized sixty (60) benefit payments. Compl. ¶ 15. These additional forty-two (42) payments can be traced directly to Fleetwood. Compl. ¶ 42. Fleetwood knew or reasonably should have known were not properly payable to him. Compl. ¶¶ 33, 38, 44, 58. His retention of these payments is unauthorized. Compl. ¶¶ 10, 24, 29, 32, He knows that he holds plan assets and is a fiduciary with respect to the Plan with an obligation to return the funds. Compl. ¶ 46. The Funds seek repayment and restitution of these funds with any profits, and ask the Court to declare a

constructive trust for the amount of $56,908.32 and profits on any remaining assets or other property to which the excess payments and plan assets have been converted.

Fleetwood filed a memo with the Clerk dated October 8, 2007, that the Court and Plaintiff have treated as an answer to the Complaint. In his memo, Fleetwood asserted the following claims:

- Fleetwood does not work in the District of Columbia, has always been in Delaware and the Fund should be required to sue him where he lives, works or where the alleged breach of the alleged contract took place.

- He has never had a contract with the union, was never notified of any contract between the union and him nor signed anything regarding his stepfather's pension obligating him to repay the funds to the union sent to him in error.

He reiterates the same points in his "Civil Statement" requesting a ruling on jurisdiction and venue.[1]

## ARGUMENT

### I. FEDERAL COURTS HAVE SUBJECT MATTER JURISDICTION OVER ALL BENEFIT DISPUTES

This is an action to recover plan assets mistakenly paid to the beneficiary of a pension plan participant by the Plan. The plan seeks to recover these assets. Its core allegation is Count I

---

[1] The "answer" also raised potential limitations defenses. The limitations defense is at best a partial defense and involves questions of law and fact on discovery and due diligence that are beyond the scope of the present "motion" and this response.

for the "Enforcement of Pension Plan Terms" with related possible claims in contract, tort, equity and for breach of fiduciary duty.[2] All of these claims are federal in nature.

A.   Subject Matter Jurisdiction

The Employee Retirement Income Security Act ("ERISA") confers subject matter jurisdiction over this case. 29 U.S.C §1132(a)(3) allows an action "to enjoin any act or practice which violates any …terms of the plan, or to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce …. the terms of the plan, with federal court subject matter jurisdiction under 29 U.S.C §1132(e).[3] As noted in *Sereboff v. Mid Atlantic Medical Services, Inc.*, __ U.S. ___, 126 S.Ct. 1869, 1873 (2006), an action to recover benefits paid to a participant falls within this rubric.[4]

28 U.S.C §1331 separately provides jurisdiction over any additional claims about benefits that arise under the federal common law of ERISA, *Board of Trustees of Hotel and Restaurant*

---

[2]   Plaintiff has prepared an amended complaint with more detailed reference to ERISA, particularly on the "Breach of Trust" claim. The Plan did not move on this detail in light of settlement discussions, but will file the motion to amend in light of Fleetwood's "Civil Statement" to clarify the issues and federal basis of the claims.

[3]   29 U.S.C §1132(e) also confers exclusive federal jurisdiction of a claim under 29 U.S.C. §§ 1132(a)(2) for breach of fiduciary duty. If a person is a fiduciary with custody of plan assets and fails to pay them to the plan, 29 U.S.C. §§ 1132(a)(2), 1109 require the breaching fiduciary "to make good to such plan any losses to the plan resulting from [a] breach and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary" and grant other equitable or remedial relief for this purpose." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003); *Chao v. Day*, 436 F.3d 234, 236-237 (D.C. Cir. 2006)(statutory language confers fiduciary status on anyone with control of the use of plan assets; collecting cases); *Mertens v. Hewitt Associates*, 508 U.S. 248, 252, 113 S.Ct. 2063 (1993).

[4]   The claim can also be stated in terms of a "contract" claim under both *Sereboff* and *Northcutt v. General Motors Hourly-Rate Employees Pension Plan*, 467 F.3d 1031 (7th Cir. 2006). *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir. 1990), used the language of unjust enrichment to require reimbursement by a participant for the reason that "no one party, not even plan beneficiaries, should unjustly profit" from a mistaken use of plan assets.

*Employees Local 25 v. Madison*, 97 F.3d 1479, 1484 (D.C. Cir. 1996); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S.Ct. 2488, 2494 (2004). This occurs from application of the "complete preemption" doctrine to ERISA claims. *Metropolitan Life Insurance v. Taylor*, 481 U.S. 58, 63-67, 107 S.Ct. 1542, 1546-1547 (1987) (emphasis supplied), explained this concept and resultant federal jurisdiction as follows.

> ... One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by §301 of the LMRA [Labor Management Relations Act, 29 U.S.C. §185] for such special treatment. *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).
>
>> "The necessary ground of decision [in *Avco* ] was that the preemptive force of §301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of §301." *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal., supra,* 463 U.S., at 23, 103 S.Ct., at 2853 (footnote omitted). There is no dispute in this litigation that Taylor's complaint, although pre-empted by ERISA, purported to raise only state law causes of action.
>
> The question therefore resolves itself into whether or not the *Avco* principle can be extended to statutes other than the LMRA in order to recharacterize a state law complaint displaced by § 502(a)(1)(B) as an action arising under federal law. .
>
> \* \* \*
>
> ... the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA. Section 502(f) says:
>
>> "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f).
>
> Cf. § 301(a) of the LMRA, 29 U.S.C. § 185(a). The presumption that similar language in two labor law statutes has a similar meaning is fully confirmed by the

legislative history of ERISA's civil enforcement provisions. The Conference Report on ERISA describing the civil enforcement provisions of § 502(a) says:

> "[W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947." H.R.Conf.Rep. No. 93-1280, p. 327 (1974) (emphasis added).
>
> No more specific reference to the *Avco* rule can be expected and the rest of the legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA.

*See also, Nichols v. Asbestos Workers Local 24 Pension Plan*, 835 F.2d 881, 894 n. 100 (D.C. Cir. 1987) ("The legislative history ... reveals a clear congressional intent to impose obligations on fund trustees under ERISA that parallel the responsibilities that the common law of trusts applies to fiduciaries").

A cause of action dealing with payment of benefits affects a 'central matter of plan administration' under ERISA, *Egelhoff v. Egelhoff*, 532 U.S. 141, 148, 121 S.Ct. 1322, 1328 (2001). Any claim that a plan improperly processed or paid benefits is thus subject to the "complete preemption" rule and is federal in nature. *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir. 1990) (overpayment may be recovered); *Metropolitan Life Ins. Co. v. Solomon*, 996 F.Supp.1473, 1475 (M.D. Fla. 1998) (overpayment may be recovered under a theory of restitution).

B.   Venue

ERISA also allows venue for suit in the district in which a benefit plan is administered, 29 U.S.C §1132(e)(2). See, *Board of Trustees, Sheet Metal Workers National Fund v. Baylor*

*Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1255 (E.D.Va. 1988) ("venue is proper in transferor forum because plaintiffs administer their funds [there]"); *Central States, Southeast and Southwest Areas Pension Fund v. Brown*, 587 F. Supp. 1067, 1068 (N.D.Ill. 1984) (venue is proper under 29 U.S.C. §1132(e)(2) in forum where plan is administered). The plan is administered in the District of Columbia, as the complaint alleges.

Venue in a federal question action is governed by 28 U.S.C. §1391(b). These rules allows suit in "...a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(b)(2). All of the acts or omissions leading to the overpayments to Fleetwood occurred at the Plan offices in the in the District of Columbia. The addition of subsection 1391(b)(2) in addition to venue at the defendant's residence under 28 U.S.C. §1391(b)(1) shows that Fleetwood's residence is not the sole or controlling factor on venue.

## II. THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT AS HE HAS MINIMUM CONTACTS WITH THE UNITED STATES

This action arises under the laws of the United States, specifically ERISA. Jurisdiction arises not because of the diversity of the parities, but because the case is founded upon a federal statute. Defendant suggests that the Plan cannot sue him in the District of Columbia because he lives and works in Delaware. However, any such analysis is not the proper standard when dealing with jurisdiction based upon a federal question.

When a federal court presides over a federal question case, it is the defendant's contacts with the United States, not a forum state, that determine whether the requisite minimum contacts are present. *IAM National Pension Fund v. Wakefield Industries, Inc.* 699 F. 2d 1254, 1259 (D.C. Cir. 1983); See also, *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.

1993); *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825-26 (5th Cir. 1996); *Fitzsimmons v. Barton,* 589 F.2d 330, 333-34 (7th Cir. 1979); *Cripps v. Life Ins. Co. of North America,* 980 F 2d 1261, 1259 (9th Cir. 1992). See further, *Hogue v. Milodon Engineering, Inc.,* 736 F.2d 989, 991 (4th Cir. 1984) (federal bankruptcy court in Virginia had personal jurisdiction over a California corporation). This "National Contacts" test "inquires whether the defendant has minimum contacts with the United States as a whole". *Dittmann v. Dyno Nobel, Inc.,* 1998 U.S. Dist. LEXIS 19392, *7 (N.D.N.Y. 1998). Defendant Fleetwood admits that he is a resident of Delaware, which advertises itself as the "First State" of the United States, and thus has the necessary minimum contacts with the United States.

### III. THE DISTRICT OF COLUMBIA IS AN APPROPRIATE VENUE AND IS NOT INCONVENIENT

The Defendant's "Civil Statement" may also be construed as a request for a change of venue to Delaware based on 28 U.S.C. §1404(a) or the doctrine of *forum non conveniens*. The statutory and common law rules rely on the same considerations, see. n. 2 *infra*, and neither doctrine requires of allows a transfer here.

#### A. 28 U.S.C. §1404(a)

An application for a transfer of venue under Section 1404(a) is permissible where the venue is proper in the transferor forum, and where the proposed transferee forum is one where the suit might have been brought. 28 U.S.C. §1404(a); *Mitchell v. Gundlach,* 136 F. Supp. 169 (D. Md. 1955); *Solomon v. Continental American Life Ins. Co.,* 472 F.2d 1043, 1045 (3d Cir.1973). As discussed above, venue is proper in the United States District Court for the District of Columbia, as that is where the Fund is administered and a substantial part of the acts or omissions giving rise the claim occurred.

The general language of Section 1404(a) allowing change of venue is "rarely dispositive in specific cases." *Trustees, Sheet Metal Workers National Fund v. Baylor Heating*, 702 F. Supp. at 1255. The rule does not require or allow a transfer simply at a defendant's request, but rather, "... vests district courts with substantial discretion to decide transfer motions by weighing various factors under the broad rubric of 'the convenience of the parties and witnesses,' and 'the interest of justice.'" *Id*. Transfer under Section 1404(a) is an easier hurdle than dismissal under the *forum non conveniens* doctrine and is the only potential basis to change the forum here.[5]

(1)     **Plaintiffs' Choice of Forum.**

Generally, "plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843 (1947); *In re Scott*, 709 F.2d 717, 720 (D.C. Cir.1983). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508; 67 S.Ct. at 843; *North Branch Products, Inc. v Fisher*, 284 F.2d 611, 613 (D.C.Cir. 1960)[6]

---

[5]     As explained in *North Branch Products, Inc. v Fisher*, 284 F.2d 611, 613 n.3 (D.C. Cir. 1960)

> .... *forum non conveniens* differs from a transfer under 28 U.S.C.A. 1404(a) (1958), a more stringent showing being required for the former. *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789, quoting from *All States Freight, Inc. v. Modarelli*, 3 Cir., 1952, 196 F.2d 1010, 1011:
>
>> 'The forum non conveniens doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else.'

[6]     While *Gulf Oil* arose in the context of a transfer based on "*forum non conveniens*," the principles espoused by the Supreme Court regarding *forum non conveniens* are applied in evaluating the "convenience of the parties and witnesses, and further, ... the interest of justice.."

The burden is on party moving to transfer venue of action to demonstrate that balance of proper interests weighs strongly in favor of the transfer, *North Branch Products*, 284 F.2d at 613 n. 3, quoting *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950); *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C.1995); *International Brotherhood of Painters and Allied Trades Union Industrial Pension Fund v. Best Painting & Sandblasting Company, Inc.*, 621 F. Supp. 906, 907 (D.D.C. 1985) ("[s]ince Congress has enacted a special venue provision to allow multiemployer pension plans to more efficiently collect delinquent contributions, the burden on the defendant [to demonstrate need for venue transfer] is especially heavy.") *Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund. v. Best Automatic Fire Protection, Inc.*, 578 F. Supp. 94, 96 (D.Md. 1983) (the plaintiff's choice of forum is due substantial deference). Defendant cannot meet his burden for transfer.

    (2)    **Witness Convenience.**

Witness convenience can be a major factor in transferring ERISA cases. *See Central States, SE & SWA Pension Fund v. Brown*, 587 F. Supp. at 1067. However, "the influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony," which information is "typically submitted in affidavit form," and "is necessary to enable the court to ascertain how much weight to give a claim in inconvenience." *Trustees, Sheet Metal Workers National Fund v. Baylor Heating*, 702 F. Supp. at 1257; *Central States, SE & SWA Pension Fund v. Brown,*, 587 F. Supp. at 1070 ("[i]n

---

under Section 1404(a) in transfer cases. *In re Scott*, 709 F.2d 717, 720 (D.C. Cir.1983), citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, (1955). See also, *Trustees, Sheet Metal Workers National Fund v. Baylor Heating*, 702 F. Supp. at 1255 ("[t]he starting point for analysis of what factors are relevant and the weight they should be accorded [in deciding transfer motions under Section 1404(a)] is *Gulf Oil Corp. v. Gilbert*"); *Central States, SE & SWA Pension Fund v. Brown*, 587 F. Supp. at 1070 (citing considerations set forth in *Gulf Oil*).

considering the convenience of potential witnesses, the Court must consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues of the case"). A transfer of venue is not appropriate if it only serves to shift the inconvenience from one party to another. *See Trustees, Sheet Metal Workers National Fund v. Baylor Heating*, 702 F. Supp. at 1258 ("transfer is inappropriate because the result of transfer would serve only to 'shift the balance of inconvenience.'" citation omitted); *Central States, SE & SWA Pension Fund v. Brown*, 587 F. Supp. at 1070 ("[a] mere shift in inconvenience is not, by itself, sufficient to warrant a transfer of venue under §1404(a)"); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392 (S.D.Tex. 1992) (case may not be transferred simply because moving party would prefer another forum or because claim arose elsewhere, or if only result would be to shift balance of inconvenience from the moving party to the nonmoving party.)

Defendant simply seeks to force the Fund to litigate its claims against him in an inconvenient forum, so as to create greater cost and expense to the Fund. All of the records and all of the witnesses (other than Fleetwood) for the case are in the District of Columbia. There is not basis or reason to transfer the case solely for Fleetwood's convenience.

### (3) Convenience of Parties.

While the parties' relative convenience is also a pertinent transfer factor, "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify a transfer." *Trustees, Sheet Metal Workers National Fund v. Baylor Heating*, 702 F. Supp. at 1259. When plaintiffs initiate suit in their home forum, it is assumed that plaintiffs have filed suit in the forum most convenient for them. *Id.* While Fleetwood is a party as well as a witness, "the convenience of the parties factor does not militate persuasively in favor of transfer." *Trustees, Sheet Metal*

*Workers National Fund v. Baylor Heating,* 702 F. Supp. at 1260, because transfer "would likely serve only to shift the balance of inconvenience" from Defendant to Plaintiff. Id. *Trustees, Sheet Metal Workers National Fund v. Baylor Heating,* 702 F. Supp. at 1259.

Judge Huvelle inquired *sua sponte* about convenience at the initial phone conference on this case. At that time, Mr. Fleetwood explained that it takes roughly the same time to travel from his home at the very southern end of Delaware to the District Court in Wilmington, Delaware as it takes to reach Washington, DC. Mapquest (www.mapquest.com) indicates that it takes roughly two (2) hours to travel the 103 miles from Frankford, DE to the courthouse at 844 N. King Street, in Wilmington, Delaware and roughly 2.5 hours to cover the 121 miles to this Court. This is not the stuff of which a strong case of inconvenience is made.

### (4) Interest of Justice.

The factors to be considered in evaluating whether a transfer is in the interest of justice. include: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of witnesses; and all other practical problems that make a trial easy, expeditious, and inexpensive. *See Gulf Oil Corp.,* 330 U.S. at 508. Defendant cannot make any persuasive argument and, indeed, have not, that transferring venue in this matter will have any beneficial effect on the interest of justice. See, e.g. *Daily Express, Inc. v. Northern Neck Transfer Corp.,* 483 F. Supp. 916 (M.D. Pa. 1979) (defendant requesting transfer of entire case for convenience of parties and witnesses failed to establish that the parties or witnesses would suffer any significant inconvenience if venue was retained and thus it was in the interest of justice to deny request). This factor is no different than the convenience of the parties on the facts of this case as there are no potential third-party witnesses or discovery targets. The Fund can much more easily bring its records and witnesses

the 14 or so blocks to this Court than traveling to Wilmington and the difference between travel to Wilmington or Washington to Fleetwood is marginal, at best.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the court deny any request by Defendant to dismiss for lack of jurisdiction or change venue.

Respectfully Submitted,

JENNINGS SIGMOND, P.C.

 s/ Kent Cprek
KENT CPREK
DC Bar No. 478231
JENNIFER HOPE
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615
Counsel for Plaintiff

Date:  February 19, 2008

## CERTIFICATE OF SERVICE

The undersigned states under penalty of perjury that I caused a copy of the foregoing Response to Defendant's Civil Statement to be served via first class mail, postage prepaid on the date and to the addresses below:

Daniel Fleetwood
36157 Miller's Neck Road
Frankford, DE 19945

A copy will also be served via the ECF system and first class mail on Defendant's limited counsel for settlement purposes only –

Marilyn Cain Gordon
7603 Georgia Avenue, NW, Suite 301
Washington, DC 20012

/s Kent Cprek
KENT CPREK
DC Bar No. 478231
JENNIFER HOPE
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615
Counsel for Plaintiff

Date:   February 19, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) ) | 07-998 (DAR) |
| DANIEL FLEETWOOD | ) ) ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANTS' CIVIL STATEMENT
TREATED AS A MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR CHANGE OF VENUE**

On the "Civil Statement" of Defendant *pro se*, construed and treated as a motion to dismiss, or in the alternative, for change of venue, the response of Plaintiffs and a related motion to amend the pleadings, and due consideration by the Court, it is ORDERED that Defendant's motion to dismiss for lack of personal or other jurisdiction, or in the alternative, for change of venue, is DENIED.

DATE:_____

_____
Deborah A. Robinson,    J.
Magistrate Judge