## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND<br>1750 New York Avenue, N.W.<br>Washington, DC 20006-5387 | ) ) ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 07-998 (DAR) |
| | ) | |
| DANIEL FLEETWOOD<br>36157 Miller's Neck Road<br>Frankford, DE 19945 | ) ) ) ) | |
| Defendant. | ) | |

### PLAINTIFFS' MOTION TO AMEND COMPLAINT AND JOIN A PARTY

Plaintiff International Painters and Allied Trades Industry Pension Fund ("Plan") and

Gary J. Meyers ("Meyers" and, together with Funds, "Plaintiffs") through their undersigned

counsel, move to amend the complaint in the above-captioned matter and add Meyers as a party

in the form attached as Exhibit A. (A redlined comparison to the original complaint is attached

as Exhibit 2 for the Court's convenience, without prior or current exhibits.)

In support of this motion, the Plaintiffs aver the following:

1.    On June 1, 2007, a Complaint was filed in the above-captioned matter against

Defendant Daniel Fleetwood.

2.    The Complaint was served on the Defendant on September 29, 2007.

3.    Rule 15(a) of the Federal Rules of Civil Procedure permits the amendment of a

pleading after an answer is filed by leave of the court, which shall freely be given when justice

so requires.

4.      Rules 20, 21 and 19 of the Federal Rules of Civil Procedure allow or require the joinder of additional parties needed for adjudication of an action.  Rule 21 expressly provides that misjoinder is not a ground for dismissal of an action.

5.      Plaintiffs seek leave to amend the Complaint to include Gary J. Meyers as a plaintiff to assure the presence of a Fund fiduciary as a plaintiff and more clearly to state the federal nature of the claims presented by the operative facts.

6.      A draft of this motion and the proposed amended complaint were delivered to Defendant on February 20, 2008 with a letter in the form attached as Exhibit 3 notifying Defendant of the motion and a telephone call. Counsel for Plaintiff called Defendants home phone at least four times between roughly 7:15 pm and 9:30 pm on February 20, 2008 with a busy signal each time.  This motion is filed on the assumption that Plaintiff opposes the motion, but his position can be clarified at the status conference scheduled for February 29, 2008.

WHEREFORE, Plaintiff respectfully requests that the Court grant this Motion To Amend The Complaint and Join a Party, permit the proposed Amended Complaint attached as Exhibit B to be filed and allow Defendant's prior "answer" to serve as an answer to the amended complaint absent another timely responsive pleading.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

/s/ Kent Cprek
KENT CPREK
DC Bar No. 478231
JENNIFER L. HOPE
The Penn Mutual Towers – 16th Floor
510 Walnut Street
Independence Square
Philadelphia, PA   19106-3683
215-351-0615/0617
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND GARY J. MEYERS 1750 New York Avenue, N.W. Washington, DC 20006-5387 | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 07-998 (DAR) |
| v. | ) ) | |
| DANIEL FLEETWOOD 36157 Miller's Neck Road Frankford, DE  19945 | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO AMEND COMPLAINT AND JOIN A PARTY**

Plaintiff International Painters and Allied Trades Industry Pension Fund ("Plan") and

Gary J. Meyers ("Meyers" and, together with Funds, "Plaintiffs") through their undersigned

counsel, file this Memorandum of Points And Authorities in Support of Plaintiffs' Motion to

Amend Complaint.

**BACKGROUND**

On June 1, 2007, a complaint was filed in the above-captioned matter against Defendant

Daniel Fleetwood.  The Complaint sought repayment of unauthorized benefits, in the amount of

$56,908.32, paid to Defendant from March 2002 through August 2005. These benefits payments

were received in violation of the terms of the Pension Funds' rules and regulations as set forth in

the International Painters and Allied Trades Industry Pension Plan ("Plan").

The Complaint was served on Defendant on September 29, 2007. Defendant filed an

Answer on October 11, 2007 and a "Civil Statement" on or about January 31, 2008 requesting a

ruling on jurisdiction and venue. Plaintiff accepted the "Civil Statement" as a motion to dismiss

under Fed. R. Civ. Pro. 12 on February 6, 2008 and responded on February 15, 2008. Plaintiffs now seek leave to amend the Complaint to include Gary J. Meyers as a plaintiff in this case in his capacity as a Plan fiduciary and to state the federal nature of the claims in greater clarity and detail.

## ARGUMENT

### I.   LEAVE TO AMEND SHOULD BE GRANTED TO CLARIFY THE FEDERAL NATURE OF THE CLAIMS PRESENTED

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading be "freely given when justice so requires." Fed.R.Civ.P. 15(a); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Ciralsky v. C.I.A.*, 355 F.3d 661, 666 (D.C. Cir. 2004); *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir.1999); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (court should use "strong liberality" in considering whether to grant leave to amend). This rule is given a liberal application so that a plaintiff may "be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The touchstone of Rule 15 thus is to allow an amendment of pleadings where doing so will not unduly prejudice the other party. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980); *Woodson v. Fulton*, 614 F.2d 940, 943 (4th Cir. 1980). The court should grant a request to amend, unless there has been ""undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bryn Mawr Hospital v. Coatesville Elec. Supply Co.*, 776 F.Supp. 181, 185-86 (E.D. Pa. 1991) (court will only refuse to allow amendment if the opposing party can show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence). The proposed

amended complaint will clarify the federal issues in the case in greater detail and moot any issues presented by Fleetwood's Civil Statement with minimal burden on the court or Defendant.

The issues and defenses relating to the proposed additional claims are identical to the issues and defenses to the existing claims. The proposed claims against Fleetwood arise out of the same conduct underlying the claims in the original complaint. As such, the liberal rules for allowance of amended pleadings favor allowance of Plaintiffs' request for leave to file an Amended Complaint in this matter. In view of the *pro se* defense, Plaintiffs also agree to allow Fleetwood's general denial in a prior letter to the court to serve as his answer to the Amended Complaint.

Pursuant to Federal Rule of Civil Procedure 15(c), the amendment of the Complaint should relate back to the original date of the filing of the Complaint on June 1, 2007. A new claim in an amended complaint based on a different legal theory will be deemed to relate back to the date of the original filing if it arises out of the same operative facts, as a mere change of legal theory is not a new case. *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas*, 20 F.3d 1362, 1366-67 (5th Cir. 1994) (statute of limitations no bar to allowance of amended pleading to assert claim arising out of same conduct); *Federal Leasing, Inc. v. Amperif Corp.*, 840 F.Supp. 1068, 1071-72 (D. Md. 1993) (allowance of claim with new theory of recovery will relate back to the original filing where a nexus exists between proposed amendment and original claim); *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F.Supp. 181, 186 (E.D. Pa. 1991); *Volkman v. United Transp. Union*, 724 F.Supp. 1282, 1318 (D. Kan. 1989), amended in part on denial of reconsideration 770 F.Supp. 1455 (D Kan. 1991) (relation back allowed where complaint dealt broadly with violation of labor agreement and proposed amendment sought to add a more specific allegation to the more general claims in the original pleading).

## II.   LEAVE TO AMEND SHOULD BE GRANTED TO JOIN AN INDIVIDUAL FIDUCIARY IN THE ACTION

Rules 20, 21 and 19 of the Federal Rules of Civil Procedure allow or require the joinder of additional parties needed for adjudication of an action. Rule 21 expressly provides that misjoinder is not a ground for dismissal of an action.

Rule 21 of the Federal Rules of Civil Procedure allows parties to be added by order of the court on motion of any party on such terms as are just. Fed.R.Civ.Pro. 21. Courts have wide discretion concerning the joinder of parties, *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982). As with an amended complaint, joinder of an additional party may be granted absent prejudice to the opposing party or undue expense or delay, *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (citing Charles Alan Wright, et al., Federal Practice and Procedure § 1652 at 396 (2001)). Federal Rule 20 allows the permissive joinder of parties on claims arising from the same operative facts and Federal Rule 19 goes further to require the joinder of parties needed for a just adjudication.

The original complaint names the Pension Fund as a party but does not name an individual plan fiduciary as a plaintiff. Plaintiff International Painters and Allied Trades Industry Pension Fund is a trust fund established under 29 U.S.C. §186(c)(5). Its Trustees collectively are the "named fiduciary," "plan administrator" and "plan sponsor," within the meaning of 29 U.S.C. §§1102(a), 1002(16), (21), for the International Painters and Allied Trades Industry Pension Plan ("Pension Plan") and International Painters and Allied Trades Industry Annuity Plan ("Annuity Plan"). They may sue in their collective capacity in the name of the trust under Fed.R.Civ.Pro. 17(b) on the federal claims asserted in this action, *The Plan Committee v. PriceWaterhouseCoopers, LLP*, 335 B.R. 234, 244 (D.D.C. 2005)(fiduciary committee may sue in its own name); *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 199 (3d

Cir. 2007) (trust may sue in its own name as well as the name of its trustee.)The Pension Plan

and Annuity Plan are each a "multiemployer plan," "employee benefit plan" and "employee

benefit pension plan" within the meaning of 29 U.S.C. §1002(37), (2) and (3).

The term "Pension Fund" is however often commonly used to reference the Pension Plan,

without distinction from the trust and its trustees who are fiduciaries of the Pension Plan. 29

U.S.C. § 1132(a)(2), (3) allow an action by a plan fiduciary, but may not allow a plan itself to

sue. See, *In Re Express Scripts, Inc., PBM Litigation,* 2007 WL 4333380 *4 -*5, 42 Employee

Benefits Cas. 1941 (E.D.Mo. 2007) (collecting case law pro and con). 29 U.S.C. § 1132(d) gives

the plan legal entity status and the ability to sue and be sued, and 28 U.S.C. § 1331 provides

federal jurisdiction for its claims, *Northeast Department ILGWU Health and Welfare Fund v.*

*Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 156, 159 (3d Cir. 1985). See also,

*Airco Industrial Gases, Inc. v. Teamsters Health and Welfare Fund of Philadelphia and Vicinity,*

850 F.2d 1028, 1033 (3d Cir. 1988) (federal question jurisdiction on implied federal common

law action by employer). In order clearly to identify a fiduciary plaintiff to assert claims and

remedies allowed by 29 U.S.C. § 1132(a)(2), (3),  Plaintiff seeks to add an individual fiduciary,

Gary J. Meyers, who is the Fund administrator with authority to represent the Fund and Pension

Plan in this type of litigation.

The Court may and should allow joinder of the new party to moot any ambiguity on

standing, *Gardner v. Benefits Communications Corp.,* 175 F.3d 155, 160-161 (D.C. Cir. 1999)

and cases cited. C.f. - *Amalgamated Cotton Garment v. J.B.C. Co. of Madera,* 608 F.Supp. 158,

164 n.10 (W.D. Pa. 1984) (amendment to add fiduciary party). Indeed, the command of Fed. R.

Civ. Pro 17(a) that "[n]o action shall be dismissed on the ground that it is not prosecuted in the

name of the real party in interest until a reasonable time has been allowed after objection for

ratification of commencement of the action by, or joinder or substitution of, the real party in

interest" mandates the substitution of a trustee for a trust if that is needed for standing,

*Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach., Inc.* -- F.Supp.2d --, 2006

WL 89867 *2 (E.D.Mich. 2006). See also, *Neuner v. C.G. Realty Capital Ventures-I, L.P (In re*

*Sharps Run Associates, L.P.)*, 157 B.R. 766, 782 (D.N.J. 1993)(substitution of receiver with

relation back). This advances the interest of justice and avoids a waste of judicial resources in

addressing an issue that does not affect the merits of the case. Meyers is fully familiar with the

case and his joinder will cause no delay nor prejudice to the Defendant.

## CONCLUSION

The Court should grant leave to file an Amended Complaint in the form attached to the

Motion in accordance with the attached proposed Order.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

/s/ Kent Cprek
KENT CPREK
DC Bar No. 478231
JENNIFER L. HOPE
The Penn Mutual Towers – 16th Floor
510 Walnut Street
Independence Square
Philadelphia, PA   19106-3683
215-351-0615/0617
Counsel for Plaintiff

Date: February 22, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND 1750 New York Avenue, N.W. Washington, DC 20006-5387 | ) ) ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 07-998 (DAR) |
| | ) | |
| DANIEL FLEETWOOD 36157 Miller's Neck Road Frankford, DE 19945 | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Upon consideration of the Plaintiffs' Motion to Amend Complaint and Join Party (the "Motion"), and responses, thereto, if any, it is hereby ORDERED:

1.      The Motion is granted.

2.      Pursuant to Local Rule 7(f), the proposed amended complaint attached to the Motion shall be deemed filed and served on the date of entry of this Order.

3.      The Amended Complaint shall relate back to the date of the original filing of the Complaint.

4.      Defendant's prior general denial will also be deemed to be an answer to the Amended Complaint absent service of another timely responsive pleading.

DATE:_____          _____

                                Deborah A. Robinson,          J.
                                Magistrate Judge

193477-1

## CERTIFICATE OF SERVICE

I, Jennifer L. Hope, Esquire state under penalty of perjury that I caused a copy of the foregoing Plaintiffs' Motion to Amend Complaint and Join Party along with Memorandum of Points and Authorities in support thereof to be served via first class mail, postage prepaid on the date and to the address below:

Daniel Fleetwood
36157 Miller's Neck Road
Frankford, DE 19945

A copy will also be served via the ECF system and first class mail on Defendant's limited counsel for settlement purposes only –

Marilyn Cain Gordon
7603 Georgia Avenue, NW, Suite 301
Washington, DC 20012

s/ Kent Cprek
KENT CPREK

Date: __February 22, 2008__

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION ~~FUND~~PLAN GARY J. MEYERS 1750 New York Avenue, N.W. Washington, DC 20006-5387 <br><br> Plaintiff<u>s</u>, <br><br> v. <br><br> DANIEL FLEETWOOD 36157 Miller's Neck Road Frankford, DE 19945 <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | <u>      </u>CIVIL ACTION NO. <u>      07-998 (DAR)</u> |

**PROPOSED**
**AMENDED COMPLAINT**

~~The International Painters and Allied Trades Industry Pension Fund ("Fund" or "Plaintiff")~~ <u>Plaintiffs</u> complain of Defendant as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of this action pursuant to 29

U.S.C. §_1132(e)<u>(1)</u>, 28 U.S.C. §_1331 and/or the supplemental jurisdiction of the Court under 28

U.S.C. §_1367(a<u>))</u> <u>as to any claims that are found to lie under state law.  The claims asserted</u>

<u>relate to violations of the terms of an employee benefit plan or the Employee Retirement Income</u>

<u>Security Act ("ERISA") and include related claims under the federal common law of ERISA.</u>

2.      Venue lies in this District pursuant to 29 U.S.C. §_1132 (e)(2) and 28 U.S.C. §

1391(b).

3.      A copy of this Complaint has been served on the Secretary of Labor and the

Secretary of the Treasury of the United States by certified mail.

4.   There is a real and actual case or controversy between Plaintiff and Defendant over

Defendant's failure to abide by the terms of the documents of the Fund governing receipt of



pension benefits, as well as the entitlement of the ~~Plan~~Fund to reimbursement of benefits received by Defendant to which he was not entitled.

## PARTIES

5.    Plaintiff, International Painters and Allied Trades Industry Pension Plan ("Fund (~~"Fund" or "Plaintiff"~~) is a trust fund established under 29 U.S.C. § 186(c)(5) and is a "multiemployer plan" and "employee benefit [pension] plan" within the meaning of 29 U.S.C. § 1002(37), (1), (2) and (3).

~~6.   Defendant, Daniel Fleetwood ("Fleetwood") is an individual who resides at the address in the caption and is the assigned beneficiary of the monthly pension benefits of John Pierce.~~

6.    Plaintiff Gary J. Meyers ("Fiduciary" or, jointly or severally with the Fund, "Plaintiffs") is a fiduciary of the Fund with respect to payment of benefits and collection of overpayments within the meaning of 29 U.S.C. § 1002(21).   He is authorized to sue as a fiduciary on behalf of the Fund and its entire Board of Trustees.

7.    Defendant Daniel Fleetwood ("Fleetwood" or "Defendant") is an individual who resides at the address in the caption.

## BACKGROUND

~~7.~~8.    Fleetwood is the ~~assigned~~designated beneficiary of John Pierce ("Pierce") who was a ~~Participant~~participant under the terms of the ~~Pension~~ Fund's pension plan rules and regulations as set forth in the International Painters and Allied Trades Industry Pension Plan ("Plan").

~~8.~~9.    Pierce died in February 1997.

9.10.   Prior to his death, Pierce had submitted an application for payment of disability benefits in the form of a single life annuity with a guaranteed five-~year ~certain~ option under the terms of the ~Plan.  True and correct copies~Fund's plan of ~§§6.13 and 7.13 of the Plan are~ ~attached as Exhibit 1 and incorporated by reference.~benefits.

10.11.  According to the guaranteed five-year pension option, if Pierce died before receiving sixty (60) monthly pension payments, the benefit would continue to be paid to his beneficiary until a total of sixty (60) monthly pension payments had been paid to him and the beneficiary.

11.12.  At the time of his death Pierce had not received any payments, but his pension was retroactive to March 1, 1997.  ~As a result, the first payment Fleetwood received included~ ~retroactive amounts for the eight (8) month period March 1997 through November 1997.~

13.   ~Plaintiff sent Fleetwood a letter on~In a letter of October 30, 1997 to Marilyn Dugan, Esquire, the Fund advised of the death benefit of sixty (60) monthly payments to Fleetwood and enclosed an application. See Exhibit 1.

14.   Fleetwood returned the application for death benefits to the Fund.

12.15.  On November 14, 1997, Plaintiffs sent Fleetwood a letter explaining that ~be~he would continue to receive monthly pension payments until February 1, 2002, after which the payments would terminate.  See Exhibit 2.

~13. Due to an administrative error the monthly pension benefit payments continued for~ ~an additional forty-two (42) months following the scheduled termination date.~

16.   ~Plaintiff's discovered the overpayments during a routine~ Fleetwood accepted the payments tendered by the Fund under the conditions stated in its plan of benefits and letter(s) to

Fleetwood.  The first payment to Fleetwood included retroactive amounts for the eight (8) month period March 1997 through November 1997.

17.    Due to an administrative error in entry of a cut-off date, the monthly pension benefit payments continued for an additional forty two (42) months following the scheduled termination date.

~~14.~~18.  Despite annual independent audits and other due diligence, the continuing overpayments were only discovered in a compliance review ~~at which time~~in 2005 and Fleetwood's monthly payments were terminated effective August 2005.

~~15.~~19.  ~~Plaintiff's~~The Fund sent a certified letter to Fleetwood on August 24, 2005 notifying him that he had received forty two (42) overpayments in the total amount of $56,908.32 ($1,354.96 x 42 months) and asking Fleetwood to contact the Fund office to arrange a repayment schedule.

~~16.~~20.  Fleetwood did not respond to the August 24, 2005 letter.

~~17.~~21.  On June 22, 2006, a notice of debt collection was sent to Fleetwood which contained a right of appeal.

~~18.~~22.  Fleetwood responded by sending a letter to ~~Plaintiff's~~Fund counsel on June 25, 2006, stating that he refused to repay the overpayment.  The Fund treated the June 25, 2006 letter as an appeal and the Trustees reviewed Fleetwood's appeal at the May 2007 meeting, at which time the appeal was denied.

~~19.~~23.  All conditions precedent to this lawsuit have been satisfied.

## COUNT I – ENFORCEMENT OF PENSION PLAN TERMS

~~20.~~24.  ~~Plaintiff incorporates~~Plaintiffs incorporate Paragraphs 1 through ~~19~~23 by reference as if fully restated.

21.25.  Section Sections 5.06 and 7.1312 of the Fund's Plan statesplan of benefits in effect in 1997 provided in pertinent part: "If the Participant dies before receiving 60 monthly payments, the benefit will continue to be paid to the Participant's Beneficiary until a total of 60 payments have been paid to the Participant and Beneficiary."- See Exhibit 3.

22.26.  Fleetwood was entitled to receive sixty (60) pension benefit payments during the period March 1997 through February 2002.

23.27.  Fleetwood received the sixtieth (60th) and final authorized payment in February 2002.

24.28.  No monthly pension plan benefits were payable to Fleetwood for any months beyond the sixty (60) months set forth in §7.13 of the Plan.Fund's plan of benefits.

25.29.  Fleetwood accepted forty two (42) payments beyond the sixty (60) payments that were permissible.

26.30.  Fleetwood has refused to return the 42 payments he received in error.

27.31.  Plaintiff isPlaintiffs are adversely affected by Fleetwood's acts or omissions in violation of the Plan.Fund's plan of benefits.

WHEREFORE, Plaintiff asksPlaintiffs ask that the Court:

(a)     Impose a constructive trust on Fleetwood's assets with respect to the overpayment amount of $56,908.32 and require Fleetwood to make good to the Fund any losses resulting from the overpayments and to restore to the Fund any profits which have been made through use of assets of the Fund that were not properly payable to Fleetwood;

(eb)     Enter judgment against Fleetwood in favor of PlaintiffPlaintiffs to enjoin any act or practice which that violates the terms of the Fund's plan of benefits and other appropriate equitable relief to redress such violations, or enforce the terms of the plan and recover:

(1)     Fund ~~benefits~~payments in the amount of $56,908.32 that Fleetwood

received during the period March 2002 through August 2005, which were not properly payable

under the terms of the ~~Plan~~Fund's plan of benefits;

(2)     interest on such amounts until repaid to the Fund; and

(3)     the costs of this action and reasonable attorney's fees; and

(c)     grant such other relief, equitable, remedial or legal, as may be just, necessary or

appropriate.

## COUNT II — BREACH OF CONTRACT

~~28.~~32.  ~~Plaintiff incorporates~~Plaintiffs incorporate Paragraphs 1 through ~~19~~23 by

reference as if fully restated.

~~29.~~33.  Under the terms of the ~~Plan~~Fund plan of benefits, Fleetwood, as Pierce's

designated beneficiary, was entitled to receive sixty (60) monthly benefit payments because

Pierce had applied for payment of disability benefits in the form of a single life annuity with ~~five

year option.~~sixty (60) months of guaranteed payments.

~~30.~~34.  Upon Pierce's death, Fleetwood was notified ~~by a November 14, 1997 letter~~that

he would receive monthly benefit payments for the period March 1997 through February 2002 at

which time the payments would terminate.

~~31.~~35.  Fleetwood accepted these terms and received the sixty (60) authorized monthly

payments.

~~32.~~36.  No monthly pension plan benefits were payable to Fleetwood for any months

beyond the sixty (60) months set forth in ~~§7.13 of~~the ~~Plan~~Fund's plan of benefits.

~~33.~~37.  Fleetwood knowingly accepted an additional forty-~~-~~two (42) payments to which

he knew he was not entitled under the terms of the ~~Plan~~Fund's plan of benefits and ~~November~~

~~14, 1997~~ letter.~~-~~(s).

38.     ~~34.~~———Fleetwood has breached the terms of his contract with the Fund.

39.     ~~35.~~———~~The Fund has~~Plaintiffs have been damaged as a proximate result of the

breach of contract by Fleetwood.

WHEREFORE, ~~Plaintiff asks~~Plaintiffs ask that the Court:

(a)    Enter judgment against Fleetwood in favor of ~~Plaintiff~~Plaintiffs for:

(1)    the overpayment of benefits in the amount of $56,908.32 that Fleetwood

received from the Fund during the period March 2002 through August 2005, which were not

properly payable under the terms of the ~~Plan~~Fund;

(2)    interest on such amounts until repaid to the Fund, and

(3)    the costs of this action, including attorney's fees; and

(c)    grant such other relief, equitable, remedial or legal, as may be just, necessary or

appropriate.

## COUNT III – CONVERSION

40.     ~~36.~~———~~Plaintiff incorporates~~Plaintiffs incorporate Paragraphs 1 through ~~19~~23 by

reference as if fully restated.

41.     ~~37.~~———Fleetwood has converted property of the Fund held in trust for the

exclusive benefit of participants and beneficiaries of the Fund and payment solely in accordance

with the terms of the ~~Plan~~Fund's plan of benefits.

42.     ~~38.~~———Fleetwood knew or reasonably should have known payments in the

amount of $56,908.32 which he received during the period March 2002 through August 2005

were not properly payable to him and that his use and retention of such amounts was not authorized.

43. ~~39.~~ Fleetwood received such funds and converted them to his own use and benefit.

44. ~~40.~~ ~~Plaintiff has~~Plaintiffs have been damaged by the conversion of Fund pension plan assets.

WHEREFORE, ~~Plaintiff asks~~Plaintiffs ask that the Court:

(a) award restitution or damages and make the Fund whole for any losses resulting from Fleetwood's conversion of property, including the fair value of such property, and actual proceeds, product, offspring, rents or profits of such property that at any time came into his possession, custody or control;

(b) restore any profits and the fair value of use or lost opportunity from the use of Fund pension plan assets, and;

(c) grant such other relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT IV - CONSTRUCTIVE TRUST

45. ~~41.~~ ~~Plaintiff incorporates~~Plaintiffs incorporate Paragraphs 1 through ~~19~~23 and 41 to 44 by reference as if fully restated.

46. ~~42.~~ The assets of ~~Plaintiff~~the Fund have been traced into the hands of Defendant in this action.

47. ~~43.~~ Fleetwood received the assets of the Fund illegally or inequitably.

48. ~~44.~~ Fleetwood knew or reasonably should have known that payments in the amount of $56,908.32 which he received during the period March 2002 through August 2005

were not properly payable to him and that his retention of such amounts was not authorized.

49.    45.——The overpayment amount of $56,908.32 is Fund assets which remains property held in trust by the Fund.

50.    46.——Fleetwood holds the assets he received or their proceeds in trust for the Fund.

WHEREFORE, ~~Plaintiff asks~~Plaintiffs ask that the Court:

(a)    declare a constructive trust and enter judgment against Fleetwood for the amount of $56,908.32, together with interest and any profits he has made from the use of the assets of the Fund, and;

(b)    grant such other relief, legal or equitable, as may be just, necessary or appropriate.

## ~~COUNT V   UNJUST ENRICHMENT~~

~~47.——Plaintiff incorporates~~COUNT V - BREACH OF FIDUCIARY DUTY

51.    Plaintiffs incorporate Paragraphs 1 through 23, 41 to 44 and ~~34~~46 to ~~37~~50 by reference as if fully restated.

~~48.   Fleetwood was overpaid benefits from the Fund.~~

~~49.   Fleetwood knew or reasonably should have known that he had received an overpayment when it was received by him.~~

~~50.   It is inequitable for Fleetwood to retain the overpayments.~~

~~51.   By reason of his failure to return the overpayments, Fleetwood has been unjustly enriched at the expense of the Fund and its other participants and beneficiaries.~~

52.    ——Defendant is a fiduciary with respect to the Fund under 29 U.S.C. § 1002(21) by reason of his possession, authority and control respecting the management or disposition of Fund assets with respect to Fund assets in his possession.

53.    As a custodian and fiduciary in possession of Fund assets, Defendant had a duty to safeguard the Fund assets and return them to the Fund, on demand or earlier, and to account for assets received and earnings or profits thereon.

54.    Defendant violated 29 U.S.C. § 1104 and adversely affected or damaged the Fund and its participants or beneficiaries by retaining Fund assets that were not properly payable to him and/ or diverting assets of the Fund to his own use or benefit.

55.    Plaintiffs are adversely affected by Defendant's acts or omissions in violation of 29 U.S.C. § 1104.

WHEREFORE, PlaintiffPlaintiffs ask that the Court:

(a)    Require Defendant to render an accounting of Fund assets received and held by him and their earnings, profits or proceeds due the Fund or allow an audit by the Fund to prepare such an accounting;

(b)    Enjoin Defendant, his agents, servants, employees, attorneys, fiduciaries and persons in active concert or participation with him and others who receive actual notice of an order, to comply with governing law and the terms of the Fund's plan of benefits with respect to the care and custody of Plan assets and accounting for the custody and earnings on Fund assets;

(c)    Require Defendant to make good any losses to the Fund resulting from his breach of fiduciary duty and to restore to the Fund any profits or which have been made through use of assets of the Fund by him, and

(d)    Grant such other equitable or remedial relief as the Court may deem appropriate.

## COUNT VI - PROHIBITED TRANSACTION

56.    Plaintiffs incorporate Paragraphs 1 through 23, 41 to 44, 46 to 50 and 0 to 55 by reference as if fully restated.

57.    Defendant is a party-in-interest with respect to the Fund within the meaning of 29 U.S.C. §§ 1002(14), 1106.

58.    29 U.S.C. § 1106(a) provides in part:

A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ...

(D) transfer to, or use by or for the benefit of a party-in-interest, of any assets of the plan.

59.    29 U.S.C. § 1106(a) separately and additionally prohibits the sale or exchange, lease, lending of money or other extension of credit, or furnishing of goods, services or facilities between a plan and a party-in-interest.

60.    29 U.S.C. § 1106(b) provides in part:

A fiduciary with respect to a plan shall not –

(1)    deal with the assets of the plan in his own interest or for his own account,

(2)    in his individual or any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, ...

61.    29 U.S.C. § 1106(b)(3) separately prohibits any receipt of consideration by a fiduciary for his own personal account from any party dealing with the plan in connection with a transaction involving the assets of a plan.

62.    29 U.S.C. § 1108(c) permits a fiduciary with respect to the Fund to receive and retain only the benefit amounts to which he is entitled under the terms of the Fund on the same basis as other plan participants.

63.    The acts or omissions of Defendant violate 29 U.S.C. § 1106.

64.    The violations of 26 U.S.C. § 1106 by Defendant are not exempt under 29 U.S.C. § 1108.

65.     The Fund and Plaintiffs have been damaged or adversely affected by the prohibited transactions.

WHEREFORE, Plaintiffs ask that the Court:

(a)     Require Defendant to correct the prohibited transaction;

(b)     Require Defendant to make good to such plan any losses to the plan resulting from each such breach and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary; and

(c)     Grant any other equitable, remedial or other relief as the law permits and the Court may deem appropriate.

## COUNT VII – UNJUST ENRICHMENT

66.     Plaintiffs incorporate Paragraphs 1 through 23, 41 to 44, 46 to 50 and 0 to 55 by reference as if fully restated.

67.     Fleetwood was overpaid money from the Fund.

68.     Fleetwood knew or reasonably should have known that he had received an overpayment when it was received by him.

69.     It is inequitable for Fleetwood to retain the overpayments.

70.     By reason of his failure to return the overpayments, Fleetwood has been unjustly enriched at the expense of the Fund and its other participants and beneficiaries.

WHEREFORE, Plaintiffs respectfully requests that the Court:

(a)     Impose a constructive trust on the assets improperly received by Fleetwood.

(b)     Require Fleetwood to make restitution to the Fund of the assets by which he has been unjustly enriched, together with interest and any profits he has made from the use of the

assets of the Fund, and;

~~(c)      Award the Fund compensatory and punitive damages in such amount as shall be determined at trial.~~

~~(d)      Enter judgment against Fleetwood for all damages suffered by the Fund, interest and profits and their costs of this action, including attorneys' fees, and~~

~~(e)      grant such other relief, legal or equitable, as may be just, necessary or appropriate.~~

~~COUNT VI — BREACH OF TRUST~~

52.    ~~Plaintiff incorporates Paragraphs~~ (c)  Enter judgment against Fleetwood in favor of Plaintiffs to enjoin any act or practice that violates the terms of the Fund's plan of benefits and other appropriate equitable relief to redress such violations, or enforce the terms of the plan and recover:

(1 ~~through 19 by reference as if fully restated.~~

53.    ~~Under the terms of the Plan, Fleetwood was entitled to receive sixty (60) monthly benefit )~~   Fund payments ~~with the final payment to be made February 1, 2002.~~

54.    ~~Fleetwood was notified by a November 14, 1997 letter that the monthly benefit payments would terminate after February 1, 2002.~~

55.    ~~No monthly pension plan benefits were payable~~ in the amount of $56,908.32 that Fleetwood received during the period March 2002 through August 2005, which were not properly payable ~~to Fleetwood for any months beyond the sixty (60) months set forth in §7.13 of the Plan.~~

56.    ~~Due to an administrative error, the Fund continued to make monthly benefit payments to Fleetwood after the termination date; payments Fleetwood was not entitled to accept under the terms of the Plan.~~

57. In total, Fleetwood accepted an additional forty-two (42) payments to which he was not entitled.

58. Fleetwood knew or reasonably should have known that the payments he received after the termination date were overpayments not authorizedhim under the terms of the Plan.

59. Fleetwood failed to take any corrective action regarding the overpayments.

60. The Fund has been damaged as a result of Fleetwood's breach of trust.

WHEREFORE, Plaintiff asks that the Court:

(a) Enter judgment against Fleetwood in favor of Plaintiff for:

(1) the overpaymentFund's plan of benefits in the amount of $56,908.32 that Fleetwood received from the Fund during the period March 2002 through August 2005, which were not properly payable under the terms of the Plan;:

(2) interest on such amounts until repaid to the Fund,; and

(3) the costs of this action, including and reasonable attorney's fees; and

——— (b)   (d)    grant such other relief, equitable, remedial or legal, as may be just,

necessary or appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

KENT CPREK (I.D. #40806)
SANFORD G. ROSENTHAL (I.D. #478737)
ELIZABETH A. COLEMAN *
DC Bar No. 478231
JENNIFER L. HOPE
The Penn Mutual Towers – 16th Floor
510 Walnut Street
Independence Square
Philadelphia, PA   19106-3683
215-351-0615/0611/06440617
Counsel for PlaintiffPlaintiffs

Date:————————————— ——————————————

*Application for Pro Hac Admission of Elizabeth A. Coleman shall be made at the appropriate time.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED   )
TRADES INDUSTRY PENSION PLAN   )
GARY J. MEYERS   )
1750 New York Avenue, N.W.   )
Washington, DC 20006-5387   )
   )    CIVIL ACTION NO.
            Plaintiffs,   )    07-998 (DAR)
   )
v.   )
   )
DANIEL FLEETWOOD   )
36157 Miller's Neck Road   )
Frankford, DE  19945   )
   )
            Defendant.   )

### PROPOSED
### AMENDED COMPLAINT

Plaintiffs complain of Defendant as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 29

U.S.C. § 1132(e)(1), 28 U.S.C. § 1331 and/or the supplemental jurisdiction of the Court under 28

U.S.C. § 1367(a) as to any claims that are found to lie under state law.  The claims asserted relate

to violations of the terms of an employee benefit plan or the Employee Retirement Income

Security Act ("ERISA") and include related claims under the federal common law of ERISA.

2.      Venue lies in this District pursuant to 29 U.S.C. § 1132 (e)(2) and 28 U.S.C. §

1391(b).

3.      A copy of this Complaint has been served on the Secretary of Labor and the

Secretary of the Treasury of the United States by certified mail.

4.   There is a real and actual case or controversy between Plaintiff and Defendant over

Defendant's failure to abide by the terms of the documents of the Fund governing receipt of



EXHIBIT
B

pension benefits, as well as the entitlement of the Fund to reimbursement of benefits received by Defendant to which he was not entitled.

## PARTIES

5.     Plaintiff International Painters and Allied Trades Industry Pension Plan ("Fund") is a trust fund established under 29 U.S.C. § 186(c)(5) and is a "multiemployer plan" and "employee benefit [pension] plan" within the meaning of 29 U.S.C. § 1002(37), (1), (2) and (3).

6.     Plaintiff Gary J. Meyers ("Fiduciary" or, jointly or severally with the Fund, "Plaintiffs") is a fiduciary of the Fund with respect to payment of benefits and collection of overpayments within the meaning of 29 U.S.C. § 1002(21).   He is authorized to sue as a fiduciary on behalf of the Fund and its entire Board of Trustees.

7.     Defendant Daniel Fleetwood ("Fleetwood" or "Defendant") is an individual who resides at the address in the caption.

## BACKGROUND

8.     Fleetwood is the designated beneficiary of John Pierce ("Pierce") who was a participant under the terms of the Fund's pension plan rules and regulations as set forth in the International Painters and Allied Trades Industry Pension Plan ("Plan").

9.     Pierce died in February 1997.

10.     Prior to his death, Pierce had submitted an application for payment of disability benefits in the form of a single life annuity with a guaranteed five-year option under the terms of the Fund's plan of benefits.

11.     According to the guaranteed five-year pension option, if Pierce died before receiving sixty (60) monthly pension payments, the benefit would continue to be paid to his

beneficiary until a total of sixty (60) monthly pension payments had been paid to him and the beneficiary.

12.    At the time of his death Pierce had not received any payments, but his pension was retroactive to March 1, 1997.

13.    In a letter of October 30, 1997 to Marilyn Dugan, Esquire, the Fund advised of the death benefit of sixty (60) monthly payments to Fleetwood and enclosed an application. See Exhibit 1.

14.    Fleetwood returned the application for death benefits to the Fund.

15.    On November 14, 1997, Plaintiffs sent Fleetwood a letter explaining that he would continue to receive monthly pension payments until February 1, 2002, after which the payments would terminate. See Exhibit 2.

16.    Fleetwood accepted the payments tendered by the Fund under the conditions stated in its plan of benefits and letter(s) to Fleetwood. The first payment to Fleetwood included retroactive amounts for the eight (8) month period March 1997 through November 1997.

17.    Due to an administrative error in entry of a cut-off date, the monthly pension benefit payments continued for an additional forty two (42) months following the scheduled termination date.

18.    Despite annual independent audits and other due diligence, the continuing overpayments were only discovered in a compliance review in 2005 and Fleetwood's monthly payments were terminated effective August 2005.

19.    The Fund sent a certified letter to Fleetwood on August 24, 2005 notifying him that he had received forty two (42) overpayments in the total amount of $56,908.32 ($1,354.96 x 42 months) and asking Fleetwood to contact the Fund office to arrange a repayment schedule.

20.    Fleetwood did not respond to the August 24, 2005 letter.

21.    On June 22, 2006, a notice of debt collection was sent to Fleetwood which contained a right of appeal.

22.    Fleetwood responded by sending a letter to Fund counsel on June 25, 2006, stating that he refused to repay the overpayment. The Fund treated the June 25, 2006 letter as an appeal and the Trustees reviewed Fleetwood's appeal at the May 2007 meeting, at which time the appeal was denied.

23.    All conditions precedent to this lawsuit have been satisfied.

## COUNT I – ENFORCEMENT OF PENSION PLAN TERMS

24.    Plaintiffs incorporate Paragraphs 1 through 23 by reference as if fully restated.

25.    Sections 5.06 and 7.12 of the Fund's plan of benefits in effect in 1997 provided in pertinent part: "If the Participant dies before receiving 60 monthly payments, the benefit will continue to be paid to the Participant's Beneficiary until a total of 60 payments have been paid to the Participant and Beneficiary." See Exhibit 3.

26.    Fleetwood was entitled to receive sixty (60) pension benefit payments during the period March 1997 through February 2002.

27.    Fleetwood received the sixtieth (60th) and final authorized payment in February 2002.

28.    No monthly pension plan benefits were payable to Fleetwood for any months beyond the sixty (60) months set forth in the Fund's plan of benefits.

29.    Fleetwood accepted forty two (42) payments beyond the sixty (60) payments that were permissible.

30.    Fleetwood has refused to return the 42 payments he received in error.

31.    Plaintiffs are adversely affected by Fleetwood's acts or omissions in violation of the Fund's plan of benefits.

WHEREFORE, Plaintiffs ask that the Court:

(a)    Impose a constructive trust on Fleetwood's assets with respect to the overpayment amount of $56,908.32 and require Fleetwood to make good to the Fund any losses resulting from the overpayments and to restore to the Fund any profits which have been made through use of assets of the Fund that were not properly payable to Fleetwood;

(b)    Enter judgment against Fleetwood in favor of Plaintiffs to enjoin any act or practice that violates the terms of the Fund's plan of benefits and other appropriate equitable relief to redress such violations, or enforce the terms of the plan and recover:

(1)    Fund payments in the amount of $56,908.32 that Fleetwood received during the period March 2002 through August 2005, which were not properly payable under the terms of the Fund's plan of benefits;

(2)    interest on such amounts until repaid to the Fund; and

(3)    the costs of this action and reasonable attorney's fees; and

(c)    grant such other relief, equitable, remedial or legal, as may be just, necessary or appropriate.

## COUNT II — BREACH OF CONTRACT

32.    Plaintiffs incorporate Paragraphs 1 through 23 by reference as if fully restated.

33.    Under the terms of the Fund plan of benefits, Fleetwood, as Pierce's designated beneficiary, was entitled to receive sixty (60) monthly benefit payments because Pierce had applied for payment of disability benefits in the form of a single life annuity with sixty (60) months of guaranteed payments.

34.     Upon Pierce's death, Fleetwood was notified that he would receive monthly benefit payments for the period March 1997 through February 2002 at which time the payments would terminate.

35.     Fleetwood accepted these terms and received the sixty (60) authorized monthly payments.

36.     No monthly pension plan benefits were payable to Fleetwood for any months beyond the sixty (60) months set forth in the Fund's plan of benefits.

37.     Fleetwood knowingly accepted an additional forty-two (42) payments to which he knew he was not entitled under the terms of the Fund's plan of benefits and letter(s).

38.     Fleetwood has breached the terms of his contract with the Fund.

39.     Plaintiffs have been damaged as a proximate result of the breach of contract by Fleetwood.

WHEREFORE, Plaintiffs ask that the Court:

(a)     Enter judgment against Fleetwood in favor of Plaintiffs for:

(1)     the overpayment of benefits in the amount of $56,908.32 that Fleetwood received from the Fund during the period March 2002 through August 2005, which were not properly payable under the terms of the Fund;

(2)     interest on such amounts until repaid to the Fund, and

(3)     the costs of this action, including attorney's fees; and

(c)     grant such other relief, equitable, remedial or legal, as may be just, necessary or appropriate.

## COUNT III – CONVERSION

40.     Plaintiffs incorporate Paragraphs 1 through 23 by reference as if fully restated.

41.    Fleetwood has converted property of the Fund held in trust for the exclusive benefit of participants and beneficiaries of the Fund and payment solely in accordance with the terms of the Fund's plan of benefits.

42.    Fleetwood knew or reasonably should have known payments in the amount of $56,908.32 which he received during the period March 2002 through August 2005 were not properly payable to him and that his use and retention of such amounts was not authorized.

43.    Fleetwood received such funds and converted them to his own use and benefit.

44.    Plaintiffs have been damaged by the conversion of Fund pension plan assets.

WHEREFORE, Plaintiffs ask that the Court:

(a)    award restitution or damages and make the Fund whole for any losses resulting from Fleetwood's conversion of property, including the fair value of such property, and actual proceeds, product, offspring, rents or profits of such property that at any time came into his possession, custody or control;

(b)    restore any profits and the fair value of use or lost opportunity from the use of Fund pension plan assets, and;

(c)    grant such other relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT IV - CONSTRUCTIVE TRUST

45.    Plaintiffs incorporate Paragraphs 1 through 23 and 41 to 44 by reference as if fully restated.

46.    The assets of the Fund have been traced into the hands of Defendant in this action.

47.    Fleetwood received the assets of the Fund illegally or inequitably.

48.    Fleetwood knew or reasonably should have known that payments in the amount of $56,908.32 which he received during the period March 2002 through August 2005 were not

properly payable to him and that his retention of such amounts was not authorized.

49.     The overpayment amount of $56,908.32 is Fund assets which remains property held in trust by the Fund.

50.     Fleetwood holds the assets he received or their proceeds in trust for the Fund.

WHEREFORE, Plaintiffs ask that the Court:

(a)     declare a constructive trust and enter judgment against Fleetwood for the amount of $56,908.32, together with interest and any profits he has made from the use of the assets of the Fund, and;

(b)     grant such other relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT V – BREACH OF FIDUCIARY DUTY

51.     Plaintiffs incorporate Paragraphs 1 through 23, 41 to 44 and 46 to 50 by reference as if fully restated.

52.     Defendant is a fiduciary with respect to the Fund under 29 U.S.C. § 1002(21) by reason of his possession, authority and control respecting the management or disposition of Fund assets with respect to Fund assets in his possession.

53.     As a custodian and fiduciary in possession of Fund assets, Defendant had a duty to safeguard the Fund assets and return them to the Fund, on demand or earlier, and to account for assets received and earnings or profits thereon.

54.     Defendant violated 29 U.S.C. § 1104 and adversely affected or damaged the Fund and its participants or beneficiaries by retaining Fund assets that were not properly payable to him and/ or diverting assets of the Fund to his own use or benefit.

55.     Plaintiffs are adversely affected by Defendant's acts or omissions in violation of 29 U.S.C. § 1104.

WHEREFORE, Plaintiffs ask that the Court:

(a)    Require Defendant to render an accounting of Fund assets received and held by him and their earnings, profits or proceeds due the Fund or allow an audit by the Fund to prepare such an accounting;

(b)    Enjoin Defendant, his agents, servants, employees, attorneys, fiduciaries and persons in active concert or participation with him and others who receive actual notice of an order, to comply with governing law and the terms of the Fund's plan of benefits with respect to the care and custody of Plan assets and accounting for the custody and earnings on Fund assets;

(c)    Require Defendant to make good any losses to the Fund resulting from his breach of fiduciary duty and to restore to the Fund any profits or which have been made through use of assets of the Fund by him, and

(d)    Grant such other equitable or remedial relief as the Court may deem appropriate.

### COUNT VI - PROHIBITED TRANSACTION

56.    Plaintiffs incorporate Paragraphs 1 through 23, 41 to 44, 46 to 50 and 52 to 55 by reference as if fully restated.

57.    Defendant is a party-in-interest with respect to the Fund within the meaning of 29 U.S.C. §§ 1002(14), 1106.

58.    29 U.S.C. § 1106(a) provides in part:

A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ...

(D) transfer to, or use by or for the benefit of a party-in-interest, of any assets of the plan.

59.     29 U.S.C. § 1106(a) separately and additionally prohibits the sale or exchange, lease, lending of money or other extension of credit, or furnishing of goods, services or facilities between a plan and a party-in-interest.

60.     29 U.S.C. § 1106(b) provides in part:

A fiduciary with respect to a plan shall not --

(1)     deal with the assets of the plan in his own interest or for his own account,

(2)     in his individual or any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, ...

61.     29 U.S.C. § 1106(b)(3) separately prohibits any receipt of consideration by a fiduciary for his own personal account from any party dealing with the plan in connection with a transaction involving the assets of a plan.

62.     29 U.S.C. § 1108(c) permits a fiduciary with respect to the Fund to receive and retain only the benefit amounts to which he is entitled under the terms of the Fund on the same basis as other plan participants.

63.     The acts or omissions of Defendant violate 29 U.S.C. § 1106.

64.     The violations of 26 U.S.C. § 1106 by Defendant are not exempt under 29 U.S.C. § 1108.

65.     The Fund and Plaintiffs have been damaged or adversely affected by the prohibited transactions.

WHEREFORE, Plaintiffs ask that the Court:

(a)     Require Defendant to correct the prohibited transaction;

(b)     Require Defendant to make good to such plan any losses to the plan resulting from each such breach and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary; and

(c)     Grant any other equitable, remedial or other relief as the law permits and the Court may deem appropriate.

## COUNT VII – UNJUST ENRICHMENT

66.     Plaintiffs incorporate Paragraphs 1 through 23, 41 to 44, 46 to 50 and 52 to 55 by reference as if fully restated.

67.     Fleetwood was overpaid money from the Fund.

68.     Fleetwood knew or reasonably should have known that he had received an overpayment when it was received by him.

69.     It is inequitable for Fleetwood to retain the overpayments.

70.     By reason of his failure to return the overpayments, Fleetwood has been unjustly enriched at the expense of the Fund and its other participants and beneficiaries.

WHEREFORE, Plaintiffs respectfully requests that the Court:

(a)     Impose a constructive trust on the assets improperly received by Fleetwood.

(b)     Require Fleetwood to make restitution to the Fund of the assets by which he has been unjustly enriched, together with interest and any profits he has made from the use of the assets of the Fund, and;

(c)     Enter judgment against Fleetwood in favor of Plaintiffs to enjoin any act or practice that violates the terms of the Fund's plan of benefits and other appropriate equitable relief to redress such violations, or enforce the terms of the plan and recover:

(1)     Fund payments in the amount of $56,908.32 that Fleetwood received during the period March 2002 through August 2005, which were not properly payable to him under the terms of the Fund's plan of benefits;

(2)     interest on such amounts until repaid to the Fund; and

(3)     the costs of this action and reasonable attorney's fees; and

(d)     grant such other relief, equitable, remedial or legal, as may be just, necessary or appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

KENT CPREK
DC Bar No. 478231
JENNIFER L. HOPE
The Penn Mutual Towers – 16th Floor
510 Walnut Street
Independence Square
Philadelphia, PA   19106-3683
215-351-0615/0617
Counsel for Plaintiffs

Date: 2/22/2008



**INTERNATIONAL**
*Brotherhood of Painters and Allied Trades Union and Industry Pension Fund*



October 30, 1997

Ms. Shelly C. Dugan
Attorney at Law
206 South Avenue
Media, PA 19063

Re.:    John Pierce (Deceased) 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
        Daniel Fleetwood (Beneficiary)

Dear Ms. Dugan:

Mr. John Pierce was vested at the time of his death and entitled to a pension benefit. Therefore, his beneficiary, Daniel Fleetwood, is eligible for a monthly benefit of $1,315.46 for 60 months.

We have enclosed a Claimant Statement which we ask that Mr. Fleetwood complete and return to this office so that we can begin payments.

If you have any questions, please let me know.

Sincerely,

*Gary J. Meyers*
GARY J. MEYERS
Fund Administrator

GJM:vjn

Enclosure

TELEPHONE
202-783-4884

FAX
202-393-6475

SUITE 501
UNITED UNIONS BUILDING
1750
NEW YORK AVENUE, N.W.
WASHINGTON, D.C.
20006-5387

*Nancy has been looking for this letter.*

EXHIBIT
1

**INTERNATIONAL**
*Brotherhood*
*of Painters*
*and Allied*
*Trades Union*
*and Industry*
*Pension Fund*

November 14, 1997

Mr. Daniel Fleetwood
630 Main Street
Trainer, PA 19061

RE: John Pierce
    SS#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

Dear Mr. Fleetwood:

Thank you for providing us with the claimant statement and a copy of the death certificate on behalf of John Pierce. We have enclosed your first check in the amount of $11,704.14 which represents the month(s) of March through November 1997. You will receive monthly pension benefits in the amount of $1,315.46 that will continue through February 1, 2002.

On behalf of the Board of Trustees we want to extend our appreciation to you for John Pierce's contribution to the Industry and we hope you will experience substantial satisfaction as the beneficiary of the monthly benefits provided by the Trustees.

Sincerely yours,

*Gary J. Meyers*

GARY J. MEYERS
Administrator

GJM/nl
opeiu #2
afl cio

Encl:ck# 0468715   $11,704.14

TELEPHONE
202-783-4848

FAX
202-393-2470

SUITE 501
UNITED UNIONS BUILDING
1755
NEW YORK AVENUE, N.W.
WASHINGTON, D.C.
20006-5387

EXHIBIT

# SUMMARY PLAN DESCRIPTION AND THE RULES AND REGULATIONS OF THE INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION PLAN (UNITED STATES)





**As Amended Through June 1, 1995**

EXHIBIT
3

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

**PARTICIPATION** .............................................................................................. 1
    Who can participate in this Plan? .................................................................. 1
    When do I become a Participant? ................................................................. 1
    Can I lose my Participant status? ................................................................. 2

**EARNING CREDIT FOR PENSIONS** ............................................................... 2
    How do I earn units of Pension Credit? ........................................................ 2
    Am I eligible for Pension Credit for employment prior to the Contribution Period? ........... 2
    How much Pension Credit do I get for employment prior to the Contribution Period? .......... 2
    Is there a limit to the Pension Credit I can receive prior to the Contribution Period? .......... 3
    Can I lose my credit for service prior to the Contribution Period? ............... 3
    How can I earn credit for service during the Contribution Period? ............. 3
    What is the maximum number of units of Pension Credit I can earn toward my Pension? ........... 4

**EARNING VESTING CREDIT** ............................................................................ 4
    How do I earn Vesting Credit? ...................................................................... 4
    When am I Vested? ....................................................................................... 4
    Can I lose my years of Vesting Credit? ........................................................ 4

**PENSION BENEFITS** ....................................................................................... 5
    The Regular Pension ................................................................................... 5
        When am I eligible for a Regular Pension? ............................................. 5
        How do I calculate the amount of my Regular Pension? .......................... 5
        Pension Benefit applicable as the result of a Merger ............................... 5
        How do I determine what Contribution Rate to use? ................................ 6
    The Reduced Pension ................................................................................. 6
        When am I eligible for a Reduced Pension? ........................................... 6
        How do I calculate the amount of my Reduced Pension? ........................ 9
    The Early Retirement Pension .................................................................... 9
        When am I eligible for an Early Retirement Pension? ............................. 9
        How do I calculate the amount of my Early Retirement Pension? ........... 9
    The Disability Pension ................................................................................ 9
        When am I eligible for a Disability Pension? ........................................... 9
        How is Permanent and Total Disability Defined? ................................... 10
        How do I calculate the amount of my Disability Pension? ...................... 10
        What happens if I recover from my Disability? ....................................... 10
    The Vested Pension ................................................................................... 10
        When am I eligible for a Vested Pension? ............................................. 10
        How do I calculate the amount of my Vested Pension? .......................... 11
    The Partial Pension .................................................................................... 11
        What is a Partial Pension? ...................................................................... 11
        Under what circumstances am I eligible for a Partial Pension? ............. 11
        How do I calculate the amount of the Partial Pension? .......................... 11

**FORMS OF PENSION PAYMENT** .................................................................. 11
    Automatic Forms of Payment ..................................................................... 12
        What if I am married on the date my Pension begins? ........................... 12
        What if I am not married on the date my Pension begins? ..................... 12
    Optional Forms of Payment ........................................................................ 13
        Joint and Survivor Option ....................................................................... 13
        Ten Year Certain Option ........................................................................ 13
        Social Security (Level Income) Option ................................................... 14
        Lump-Sum Payment Option .................................................................... 14
    What is the "Pop-Up" Option? .................................................................... 14

# TABLE OF CONTENTS (Cont.)

**DEATH BENEFITS BEFORE RETIREMENT** ............................................................ 15
    How is my Spouse protected if I die before I retire? ........................................ 15
    What happens to my benefits if I do not have a Spouse? .................................. 16

**APPLICATIONS AND APPEALS** .......................................................................... 16
    How do I apply for Benefits? ............................................................................ 16
    How long can I wait before I have to start receiving my Benefits? ................... 16
    How do I appeal a decision about my Benefits? ............................................... 16
    How would my Spouse or Beneficiary apply for a benefit in the case
        of my death? ............................................................................................. 16

**SUSPENSION OF BENEFITS** ............................................................................ 17
    What happens if I work after Retirement? ....................................................... 17
    How will I know what "Disqualifying Employment" is? ...................................... 17
    Who should I notify if I begin working in Disqualifying Employment? ............... 17
    When will my Pension Payments begin again? ................................................ 17

**OTHER INFORMATION** ..................................................................................... 18
    Can I sell, assign or pledge my Benefits? ....................................................... 18
    What are the rights of my Former Spouse? ..................................................... 18
    Who may I designate as Beneficiary? .............................................................. 18
    Can I receive more than one Pension from the Plan? ...................................... 18
    How will I know what my Benefits are under this Plan? .................................... 18
    How are contributions made to the Plan? ....................................................... 18
    Maximum Benefits ........................................................................................... 18
    Adjustment for Late Retirement ...................................................................... 18
    Minimum Participation and Coverage .............................................................. 18

**GENERAL INFORMATION** ................................................................................ 18

**HOW TO ESTIMATE YOUR PENSION** ............................................................. 22

## Automatic Forms of Payment

### What if I am married on the date my Pension begins?

If you are married at the time benefits begin, your pension is automatically payable in the form of a 50% Husband-and-Wife Pension when you retire, unless you and your Spouse reject this form in writing before a Notary Public.

Under the 50% Husband-and-Wife form, you will receive a reduced monthly amount for your lifetime. After your death, your surviving Spouse will receive a lifetime monthly benefit equal to 50% of the amount you were receiving. **The amount of pension you receive will be reduced since it is intended to protect your Spouse for life should he or she survive you.** The amount of reduction which applies depends on the age difference between you and your Spouse.

The amount of pension is first multiplied by an adjustment factor of 90%. If you and your Spouse are the same age, there is no further adjustment. For each full year your Spouse is older than you, the adjustment factor is increased by .4% to a maximum of 99%. For each full year your Spouse is younger than you, the adjustment factor will be decreased by .4%.

For the Husband-and-Wife Pension to be effective, you and your Spouse must have been married to each other throughout the one-year period ending on your pension effective date, or, if earlier, the date of your death. However, if you marry within the one-year period ending on your pension effective date, then you and your Spouse will be treated as having been married throughout that year if you and your Spouse are married for at least a one-year period ending on or before the date of your death. The effective date of your pension is defined in the Application and Appeals section of this booklet.

If you choose to name a beneficiary other than your Spouse, your Spouse must provide his or her consent. The spousal consent must be in writing and witnessed by a Notary Public. Election or revocation of the Husband-and-Wife Pension cannot be changed after the effective date of your pension.

---

**Example II:** Suppose you are age 65 and eligible for a Regular Pension of $500 per month. Further, suppose that your Spouse is age 60 and you and your Spouse do not reject the Husband-and-Wife form of pension. Your Regular Pension would be adjusted as follows:

$500.00 x 90% (automatic adjustment) = $450.00
$500.00 x 2% (.4% x 5 years younger) = - 10.00
                                         $440.00

Thus, with a Spouse five full years younger, you would receive $440.00 per month for the rest of your life. Assuming he or she survives you, 50% of that amount, or $220.00 per month, is payable for life to your Spouse upon your death.

---

Once payments begin under a Husband-and-Wife Pension, the reduced amount you receive will not be increased if you and your Spouse are divorced later on, or if your Spouse dies before you. If you and your Spouse divorce later on, she or he would still receive the spousal benefits, subject to any Qualified Domestic Relations Orders which create rights to a pension for a former Spouse or other payee.

If your Spouse dies before you, pension payments would stop upon your death. However, when you apply for your pension, you may choose a "pop-up" option. Under this option, if your Spouse dies before you, the Plan will reinstate your pension to the amount it would have been if you had rejected the Husband and Wife Pension. Electing this option means an additional reduction to your Husband and Wife Pension amount. This option is described in more detail later in this section.

Please remember that if you're married, the Husband-and-Wife Pension will take effect automatically *unless you and your Spouse reject it in writing and you have the rejection and consent notarized.* You may jointly reject this form of payment at any time within the 90-day period before your pension effective date. The rejection may be revoked or a new rejection filed any time during that period.

To be valid, the waiver and consent must also be filed <u>after</u> you have received a detailed explanation of the payment options available to you. This information will be provided to you by the Fund Office no more than 90 and no fewer than 30 days before the effective date of your pension. If you and your Spouse choose to reject the Husband-and-Wife form of payment, you may elect to receive any of the optional forms of payment described below or the Guaranteed Five-Year Pension (the automatic form of payment for an unmarried participant). Once elected, this payment form cannot be revoked or changed after the effective date of your pension.

Spousal consent is not needed if you can provide evidence to the satisfaction of the Trustees that you have no Spouse, your Spouse cannot be located, that you are legally separated, or that you have been abandoned by your Spouse. If, under these conditions, there is no Spouse, your pension will automatically be paid as a Guaranteed Five-Year Pension (see below).

Any rights of a former Spouse or alternate payee stipulated in a Qualified Domestic Relations Order will be honored, and will take precedence over those of any later Spouse.

### What if I am not married on the date my Pension Begins?

If you are single, your monthly payment will automatically be paid to you in the form of a Guaranteed Five-Year Pension. In this form, your pension will be

guaranteed for five years after your retirement. Of course, benefits are paid to you for your lifetime. But, if you die before you receive 60 monthly payments after retirement, monthly payments will continue in the same amount to any beneficiary you name until 60 monthly payments in all have been made.

If you are married and you and your Spouse choose to reject the Husband-and-Wife Pension, you may elect the Guaranteed Five-Year Pension as an optional form of payment. This guarantee does not apply if you choose the Husband-and-Wife Pension.

Once elected, the payment form cannot be revoked or changed after the effective date of your pension.

**Optional Forms of Payment**

If you are eligible for a pension and you (and your Spouse, if you are married) decide not to take the automatic forms of payment described above, you may choose one of the following options. Once elected, the payment form cannot be revoked or changed after the effective date of your pension. The effective date of your pension is defined in the Application and Appeals section of this booklet.

**Joint and Survivor Option**

Instead of the pension otherwise payable, you may elect the Joint and Survivor Option. This optional form of payment provides you with an actuarially reduced benefit for your lifetime. Then, upon your death, your designated beneficiary will receive a lifetime benefit of (at your choice) either 100%, 75% or 50% of the benefit that you were receiving. The amount of reduction in your benefit amount depends on the percentage of benefit you choose for your designated beneficiary and the age difference between you and your beneficiary when your benefits begin. Please note that once you have chosen one of these options and after the effective date of your pension, should your designated beneficiary die, no other beneficiary can be named. In this situation, benefits will continue in the reduced amount for the extent of your lifetime and cease upon your death.

The following paragraphs describe how to calculate your monthly benefit amount under the 100%, the 75%, and the 50% Joint and Survivor Options:

Where 100% of your pension is continued to your beneficiary and you and your beneficiary are the same age, the benefit is reduced to 81% of the unreduced pension. This amount will increase by 0.7% for each year your beneficiary is older than you are or decrease by 0.7% for each year that your beneficiary is younger than you are. The factor will never be greater than 96%.

Where 75% of your pension is continued to your beneficiary and you and your beneficiary are the

same age, the benefit is reduced to 85% of the unreduced pension. This amount will increase by 0.5% for each year your beneficiary is older than you are or decrease by 0.5% for each year that your beneficiary is younger than you are. The factor will never be greater than 97%.

Where 50% of your pension is continued to your beneficiary and you and your beneficiary are the same age, the benefit is reduced to 90% of the unreduced pension. This amount will increase by 0.4% for each year your beneficiary is older than you are or decrease by 0.4% for each year that your beneficiary is younger than you are. The factor will never be greater than 99%.

---

**Example 12:** Suppose that you are age 65 and eligible for a Regular Pension of $624.00 per month. You have chosen the Joint and Survivor payment option and your beneficiary is also 65 years old.

If you choose a 100% Joint and Survivor Pension, your benefit would be:

$624.00 x .81 = $505.44 per month (or $505.50)

Upon your death, your beneficiary would receive **$505.50** per month for life.

If you choose a 75% Joint and Survivor Pension, your benefit would be:

$624.00 x .85 = $530.40 per month (or $530.50)

Upon your death, your beneficiary would receive **$398.00** per month for life.

If you choose a 50% Joint and Survivor Pension, your benefit would be:

$624.00 x .9 = $561.60 per month (or $562.00)

Upon your death, your beneficiary would receive **$281.00** per month for life.

Remember, if you and your beneficiary are not the same age, the Joint and Survivor benefit amounts will be increased or decreased accordingly.

---

Once a Joint and Survivor Payment Option has been elected, the election cannot be revoked or changed after the effective date of your pension (see page 16).

When you apply for your pension, you may choose a "pop-up" option which, if your spouse dies before you, will reinstate your pension to the amount it would have been if you had not chosen the Joint and Survivor Option. Electing this option will incur an additional reduction to your Joint and Survivor Pension. This option is described in more detail later in this section.

**Ten Year Certain Option**

Whether you're married or single, you may choose to receive your benefits in monthly installments for

# INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION PLAN



**(As Amended Through June 1, 1995)**

# TABLE OF CONTENTS

**ARTICLE I — DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Section 1.01 Active Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Section 1.02 Actuarial Present Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Section 1.03 Annuity Starting Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Section 1.04 Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Section 1.05 Calendar Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Section 1.06 Collective Bargaining Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Section 1.07 Continuous Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section 1.08 Contributing Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section 1.09 Contribution Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section 1.10 Covered Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section 1.11 Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section 1.12 Noncovered Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section 1.13 Normal Retirement Age . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section 1.14 Painters and Allied Trades Industry . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section 1.15 Participant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.16 Pension Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.17 Pension Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.18 Pension Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.19 Pensioner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.20 Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.21 Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.22 Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.23 Union . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 1.24 Other Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**ARTICLE 2 — PARTICIPATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 2.01 Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Section 2.02 Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Section 2.03 Termination of Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Section 2.04 Reinstatement of Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Section 2.05 Acceptance of a New Contributing Employer . . . . . . . . . . . . . . . . . . 30
    Section 2.06 Acceptance of a Participating Local Union or District Council as a Contributing
        Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Section 2.07 Acceptance of Special Classes of Employees of a Contributing Employer . . . . . . . . . 31
    Section 2.08 Acceptance of a Union-Industry Related Organization as a Contributing Employer . . . . 31
    Section 2.09 Continuation of Employees Transferring to Union Industry Related Organizations . . . . . 31
    Section 2.10 Additional Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**ARTICLE 3 — PENSION ELIGIBILITY AND AMOUNTS** . . . . . . . . . . . . . . . . . . . . . . 32
    Section 3.01 General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    Section 3.02 Regular Pension — Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    Section 3.03 Amount of Regular Pension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    Section 3.04 Reduced Pension — Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Section 3.05 Amount of Reduced Pension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Section 3.06 Early Retirement Pension — Eligibility . . . . . . . . . . . . . . . . . . . . . . . 35
    Section 3.07 Amount of the Early Retirement Pension . . . . . . . . . . . . . . . . . . . . . . 35
    Section 3.08 Disability Pension — Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    Section 3.09 Amount of Disability Pension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    Section 3.10 Permanent and Total Disability Defined . . . . . . . . . . . . . . . . . . . . . . 35
    Section 3.11 Disability Pension Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    Section 3.12 Effect of Recovery by a Disability Pensioner . . . . . . . . . . . . . . . . . . 36
    Section 3.13 Re-Employment of a Disability Pensioner . . . . . . . . . . . . . . . . . . . . 36
    Section 3.14 Vested Pension — Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Section 3.15 Amount of Vested Pension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
Section 3.16 Non-Duplication of Pensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
Section 3.17 Voluntary Retirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Section 3.18 Death Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Section 3.19 Pension Benefits for Participants working under more than one Union jurisdiction
    or in collective bargaining units with more than one Contribution Rate under the same Union
    jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Section 3.20 Computation of Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

ARTICLE 4 — PENSION CREDITS AND YEARS OF VESTING SERVICE . . . . . . . . . . . . . . . . . 41
Section 4.01 Outline. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
Section 4.02 Credit for Service prior to the Contribution Period. . . . . . . . . . . . . . . . . . . . . . 41
Section 4.03 Loss of credit for Service prior to the Contribution Period. . . . . . . . . . . . . . . . . 42
Section 4.04 Credit for Service during the Contribution Period. . . . . . . . . . . . . . . . . . . . . . . 42
Section 4.05 Maximum Pension Credit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
Section 4.06 Years of Vesting Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
Section 4.07 Breaks in Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Section 4.08 Military Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
Section 4.09 Preservation of Prior Vesting Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

ARTICLE 5 — HUSBAND-AND-WIFE AND SURVIVING SPOUSE PENSIONS . . . . . . . . . . . . . . 44
Section 5.01 General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
Section 5.02 Husband-and-Wife Pension at Retirement — Standard Form of Benefit Payment. . . . . . 44
Section 5.03 Preretirement Surviving Spouse Pension. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
Section 5.04 Relation to Qualified Domestic Relations Order. . . . . . . . . . . . . . . . . . . . . . . . . 47
Section 5.05 Trustees' Reliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
Section 5.06 Guaranteed Five-Year Pension (Unreduced Pension) -Standard Form of Benefit
    Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

ARTICLE 6 — OPTIONAL FORMS OF PENSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
Section 6.01 General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
Section 6.02 Joint and Survivor Option. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
Section 6.03 Social Security (Level Income) Option . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Section 6.04 Ten Years Certain Option. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Section 6.05 Lump-Sum Payment Option . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

ARTICLE 7 — APPLICATIONS, BENEFIT PAYMENTS AND RETIREMENT . . . . . . . . . . . . . . . . . 49
Section 7.01 Applications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Section 7.02 Information and Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Section 7.03 Action of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Section 7.04 Right of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
Section 7.05 Benefit Payments Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
Section 7.06 Retirement Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
Section 7.07 Benefit Payments Following Suspension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Section 7.08 Vested Status or Nonforfeitability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Section 7.09 Incompetence or Incapacity of a Pensioner or Beneficiary. . . . . . . . . . . . . . . . . 54
Section 7.10 Non-Assignment of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Section 7.11 No Rights to Assets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Section 7.12 Designation of Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Section 7.13 No Beneficiary Living . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Section 7.14 Mergers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Section 7.15 Mandatory Commencement of Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

ARTICLE 8 — MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Section 8.01 Non-Reversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Section 8.02 Limitation of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
Section 8.03 Terminated Contributing Employers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
Section 8.04 Delinquent Contributing Employers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Section 8.05 Collection of Delinquent Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
Section 8.06 Termination of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
Section 8.07 Unauthorized Representations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Section 8.08 Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Section 8.09 Actuarial Reviews . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Section 8.10 Gender. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Section 8.11 Trustee-to-Trustee Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

ARTICLE 9 — PARTIAL PENSIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.01 Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.02 Recognized Pension Credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.03 Total Pension Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.04 Combined Service Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.05 Eligibility. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.06 Breaks in Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.07 Election of Pensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.08 Partial Pension Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.09 Payment of Partial Pensions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.10 Other Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
Section 9.11 Benefit Increases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
Section 9.12 Application Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

ARTICLE 10 — CONTRIBUTING EMPLOYER WITHDRAWAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
Section 10.01 In General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
Section 10.02 Complete Withdrawal Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
Section 10.03 Amount of Liability for Complete Withdrawal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
Section 10.04 Satisfaction of Withdrawal Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Section 10.05 Notice and Collection of Withdrawal Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Section 10.06 Partial Withdrawal Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
Section 10.07 Partial Withdrawal Amount of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
Section 10.08 Liability Adjustment and Abatement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
Section 10.09 Mass Withdrawal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
Section 10.10 Notice to Contributing Employers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

ARTICLE 11— MAXIMUM BENEFITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
Section 11.01 General Limit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
Section 11.02 Definitions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
Section 11.03 Adjustment for Early or Late Commencement of Benefits . . . . . . . . . . . . . . . . . . . 65
Section 11.04 Combined Plan Limits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
Section 11.05 Protection of Prior Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66
Section 11.06 Application of this Section . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

# RULES AND REGULATIONS OF THE INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION FUND

## ARTICLE I
## DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in the Plan:

### Section 1.01    Active Employee

On or after January 1, 1993, the term "Active Employee" as of a particular relevant date means an Employee who earned three units of pension credit in the three-year period immediately preceding the relevant date or an Employee who became a Participant in the Plan on or after the relevant date.

### Section 1.02    Actuarial Present Value

Unless otherwise specified in the Plan, the Actuarial Present Value of a benefit shall be determined using the interest rate prescribed by the Pension Benefit Guaranty Corporation for valuing annuities under single-employer Plans that terminate without a Notice of Sufficiency during the first month of the Plan year in which the date as of which the benefit is valued occurs. The mortality assumption shall be based on the 1971 Group Annuity Mortality Table for Males.

"Actuarial Equivalence" means two benefits of equal Actuarial Present Value based on the actuarial factors and assumptions specified in the provision in which that phrase is used or, if not otherwise specified, based on the assumptions described in this section.

### Section 1.03    Annuity Starting Date

(a) Subject to (b), below, a Participant's Annuity Starting Date is the first day of the first calendar month starting after the Participant has fulfilled all of the conditions for entitlement to benefits and after the later of:

   (1) submission by the Participant of a completed application for benefits, or

   (2) 30 days after the Plan advises the Participant of the available benefit payment options, unless

     (A) the benefit is being paid as a Husband and Wife Pension at or after the Participant's Normal Retirement Age,

     (B) the benefit is being paid out automatically as a lump sum under Article 7.05(e).

(b) The Annuity Starting Date will not be later than the Participant's Required Beginning Date as defined in Section 7.15(b).

(c) The Annuity Starting Date for a Beneficiary or Alternate Payee will be determined under subsections (a) and (b) except that references to the Husband-and-Wife Pension and spousal consent do not apply.

(d) A Participant who retires before his or her Normal Retirement Age and then earns additional benefit accruals under the Plan through reemployment will have a separate Annuity Starting Date determined under this section with respect to those additional accruals, except that an Annuity Starting Date that is on or after Normal Retirement Age shall apply for any additional benefits accrued through reemployment after that date. The benefits earned during reemployment, subsequent to retirement prior to Normal Retirement Age, shall be paid as a Husband-and-Wife Pension, if applicable, as of the new Annuity Starting Date, or, if that form is properly rejected, any other payment form available to the Participant under the Plan.

(e) In connection with the 30-day waiting period described in (a)(2) above, if the Fund mails the detailed explanation to the Participant, the waiting period will be 35 days from the date of mailing.

(f) If, for administrative reasons, such as the need to obtain reliable information to calculate benefits, actual payments must begin after the scheduled Annuity Starting Date, that delay will not affect the Annuity Starting Date or the calculation of benefits, but when payments actually begin the Participant shall receive a payment to cover the benefits due for all months after the Annuity Starting Date.

### Section 1.04    Beneficiary

The term "Beneficiary" means a person (other than a Pensioner) who is receiving, or is entitled to receive, benefits under this Plan because of his or her designation for such benefits by a Pensioner or a Participant.

### Section 1.05    Calendar Year

The term "Calendar Year" means the period from January 1 to the next December 31. For purposes of ERISA regulations, the Calendar Year shall serve as the vesting computation period, the benefit accrual computation period, and, after the initial period of employment, the computation period for eligibility to participate in the Plan.

### Section 1.06    Collective Bargaining Agreement

The term "Collective Bargaining Agreement" means any written labor contract or other document by and between a Contributing Employer and the Union

described in paragraphs (c) and (d) of this Section, except that the benefit shall be paid in accordance with the terms of the Plan in effect when the Participant last worked in Covered Employment (unless otherwise specified) as if the Participant had retired with a 50% Husband-and-Wife Pension on the day before the Surviving Spouse's Annuity Starting Date, and died the next day.

(3) A Surviving Spouse who is the Beneficiary under Section 3.18 of a Participant who died prior to age 55 may elect to receive death benefits as provided in Section 3.18. In that case, the Actuarial Present Value of the Preretirement Surviving Spouse Pension shall be reduced (but not below zero) by the amount of those death benefits, and any remaining value of the Preretirement Surviving Spouse Pension shall be paid in a single sum.

(4) The Actuarial Present Value under subparagraph (1) shall be determined using a 7% interest assumption, if that would produce a higher benefit.

(5) If the Spouse of a deceased Participant dies before the Annuity Starting Date of the Preretirement Surviving Spouse Pension, that Pension shall be forfeited and no payments shall be made to any other party.

### Section 5.04    Relation to Qualified Domestic Relations Order.

With respect to a Participant's pension, any rights of a former Spouse or other Alternate Payee under a Qualified Domestic Relations Order as both are defined in ERISA Section 2.06(d) and IRC Section 414(p), shall take precedence over those of any later Spouse of the Participant under this Article.

### Section 5.05    Trustees' Reliance.

The Trustees shall be entitled to rely on written representations, consents, and revocations submitted by Participants, Spouses or other parties in making determinations under this Article, and, unless such reliance is arbitrary or capricious, the Trustees' determinations shall be final and binding, and shall discharge the Fund and the Trustees from liability to the extent of the payments made. This means that, unless the Plan is administered in a manner determined to be inconsistent with the fiduciary standards of Part 4 of Title I of ERISA, the Fund shall not be liable under this Article for duplicate benefits with respect to the same Participant, or for surviving spouse benefits in excess of the Actuarial Present Value of the benefits described in this Section, determined as of the Annuity Starting Date or, if earlier, the date of the Participant's death.

### Section 5.06    Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit Payment.

In those instances where the Husband-and-Wife Pension is not applicable, or the Participant and his Spouse reject, in writing, the Husband-and-Wife Pension, the Participant shall be entitled upon retirement to receive the monthly benefits provided for the remainder of his or her life, except that, if the Participant dies before receiving 60 monthly payments, the benefit will continue to be paid to the Participant's designated Beneficiary until a total of 60 payments had been paid to the Participant and Beneficiary. The amount of this pension will be the unreduced benefit to which the individual is entitled under the provisions of the Plan. The 60-month guarantee of pension payments applies to Disability Pensions.

### ARTICLE 6
### OPTIONAL FORMS OF PENSION

### Section 6.01    General.

In lieu of the standard form of benefit payment under Section 5.02 or Section 5.06, whichever is applicable to the Participant, a Participant may elect one of the available options described in this Article, subject to the provisions of Section 5.02.

Unless otherwise specified, all optional forms are at least the Actuarial Equivalent of the Participant's accrued benefit, including the value of the 60-month guarantee as of the Annuity Starting Date, before any adjustment for a Husband and Wife Pension but after adjustment, if any, for early or late retirement.

### Section 6.02    Joint and Survivor Option.

(a) Instead of the pension otherwise payable, a Participant entitled to a pension may elect the Joint and Survivor Option, in accordance with which he or she will receive an actuarially reduced monthly amount, but with 100%, 75%, or 50% of that lower amount continuing after the Participant's death for the lifetime of the designated Beneficiary. The adjustment in benefit amount shall be determined by the Trustees on the basis of the advice of their actuary, taking into account the Participant's age when payment in this optional form is to commence and the age of the Beneficiary. Election of the Joint and Survivor Option shall be subject to the following conditions:

(1) Once elected, the Joint and Survivor Option may not be revoked unless the Participant or his Beneficiary dies or they are divorced from each other before a pension becomes payable under the Option, in which event the Option is automatically revoked.

(b) The Joint and Survivor Option shall not be payable if it would result in a monthly benefit of less than $20 to the Pensioner or to the Beneficiary.

### Section 7.11    No Rights to Assets.

No person other than the Trustees of the Pension Fund shall have any right, title or interest in any of the income, property or funds received or held by or for the account of the Pension Fund, and no person shall have any right to benefits provided by the Pension Plan except as expressly provided herein.

### Section 7.12    Designation of Beneficiary.

A Participant or Pensioner may designate a Beneficiary or Beneficiaries to receive the Death Benefits, if any, provided in accordance with Sections 3.18 and 6.04, by forwarding such designation to the Fund Office in a form acceptable to the Board of Trustees to the Fund Office. A Participant or Pensioner shall have the right to change the designation of Beneficiary without the consent of the Beneficiary (except, as previously discussed, the consent of the Spouse is required), but no change shall be effective or binding on the Trustees unless it is received by the Fund Office prior to the time any payments are made to the Beneficiary whose designation is on file with the Fund Office. Any benefits provided in accordance with Section 3.18 and 6.04 shall be paid to such designated Beneficiary, who has survived the Pensioner or Participant and is, therefore, entitled to the benefits provided by Sections 3.18 and 6.04. If such Beneficiary dies prior to the receipt of the payment of benefits, then benefits shall be paid in accordance with the procedures as provided in Section 7.13.

### Section 7.13    No Beneficiary Living.

If no designated Beneficiary survives at the death of a Participant, any Death Benefit provided shall be payable to the estate of the Participant subject to the terms of the third paragraph of this Section.

If no designated Beneficiary survives to receive one or more payments payable to a Beneficiary after the death of a Pensioner, the single-sum value of such payments will be payable to the estate of the last to die of the Pensioner or Beneficiary.

The Trustees may provide that any amount otherwise payable to the estate of a Participant or Pensioner will be paid instead to any one or jointly to any number of the following surviving relatives of the Participant or Pensioner who have incurred expenses in connection with the last illness or burial of the Participant or Pensioner: spouse, children, parents, brothers or sisters.

### Section 7.14    Mergers.

In the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan each Participant shall be entitled to a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to immediately before the merger, consolidation, or transfer.

### Section 7.15    Mandatory Commencement of Benefits.

(a) Notwithstanding any provision of the Plan to the contrary, the Fund will begin benefit payments to all Participants by their Required Beginning Dates, whether or not they apply for benefits.

(b) A Participant's Required Beginning Date is April 1 of the calendar year following the year the Participant reaches age 70-1/2.

(c) If a Participant, whose current mailing address is known with reasonable certainty to the Plan, fails to file a completed application for benefits on a timely basis, the Fund will establish the Participant's Required Beginning Date as the Annuity Starting Date and begin benefits payments as follows:

(1) If the Actuarial Present Value of the Participant's benefit (determined in accordance with Section 7.05, on small benefit cashouts) is no more than $3,500, in a single-sum payment.

(2) In any other case, in the form of a Husband-and-Wife Pension calculated on the assumptions that the Participant is and has been married for at least one year by the date payments start and that the husband is three years older than the wife.

(3) The benefit payment form specified here will be irrevocable once it begins, with the sole exception that it may be changed to a single-life annuity if the Participant proves that he or she did not have a qualified Spouse (including an Alternate Payee under a Qualified Dependent Relations Order) on the Required Beginning Date; also, the amounts of future benefits will be adjusted based on the actual age difference between the Participant and Spouse if proven to be different from the foregoing assumptions.

(4) Federal, state and local income tax, and any other applicable taxes, will be withheld from the benefit payments as required by law.

### ARTICLE 8
### MISCELLANEOUS

### Section 8.01    Non-Reversion.

(a) It is expressly understood that in no event shall any of the assets of the Pension Fund revert to the Contributing Employers or be subject to any claims of any kind or nature by the Contributing Employers, except as provided in (b).

(b) The Trustees may refund to employers contributions made in error, but without interest.